In the Matter of the Application of THE GENERAL SILK IMPORTING COMPANY, INC., Respondent, to Compel Arbitration by GERSETA CORPORATION, Appellant.

First Department, April 21, 1922.

Arbitration — contract for sale of raw silk drawn on blank containing printed clause " Sales are governed by Raw Silk Rules adopted by the Silk Association of America " — raw silk division rules required compulsory arbitration, association rules did not — both parties members of association but neither party member of raw silk division, a subordinate body — arbitration of differences arising from contract not compelled — rules of interpretation of alleged contracts to arbitrate not abrogated by Arbitration Law — arbitration contracts strictly construed.

A contract for the sale of raw silk was drawn on a blank form which contained the printed clause, " Sales are governed by Raw Silk Rules adopted by the Silk Association of America." The rules of the raw silk division of said association required that all differences between buyer and seller must be submitted to the arbitration committee of the association. The association rules did not make arbitration compulsory between its members. Both parties to the contract were members of the association, but neither party was a member of the raw silk division which was a subordinate body with the right to establish its own special rules, which, however, must be approved by the association. The association had approved the compulsory arbitration rule of the raw silk division.

*Held,* that arbitration of differences arising out of the contract cannot be compelled for the moving party has not sustained the burden of proving that the minds of the parties had met in agreeing to submit their differences, under the contract, to arbitration.

Although arbitration agreements in this State are now enforcible under the Arbitration Law, the rules heretofore applicable to the interpretation of contracts to determine whether the parties have agreed to arbitrate, have not been abrogated.

Since a contract to arbitrate presupposes an agreement to forego the right to resort to the courts for redress, an alleged contract to arbitrate, which is disputed, will be strictly construed in order that the parties may not be deprived of their constitutional rights to seek redress in the courts.

APPEAL by Gerseta Corporation from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of February, 1922, granting petitioner's motion that the defendant be directed " to proceed forthwith with an arbitration before the Committee on Arbitration of the Silk Association of America pursuant to the by-laws, rules and regulations of said Association applicable thereto, of the differences arising under the contract " between the parties.

*Steckler & Weitzner* [*David Steckler* of counsel; *Emil Weitzner* with him on the brief], for the appellant.

*Gould & Wilkie* [*Charles G. Keutgen* of counsel; *R. L. von Bernuth* with him on the brief], for the respondent.

GREENBAUM, J.:

The controversy between the parties out of which the order in this proceeding resulted has been before this court on two previous appeals. The first was when this court unanimously affirmed an order of the Special Term which denied the petitioner's application to compel arbitration, with leave, however, to renew. it. (198 App. Div. 16.) The second was an appeal from a peremptory mandamus order which reinstated the Gerseta Corporation to membership in the Silk Association of America, from which it had been suspended because of its failure to comply with its agreement to arbitrate the differences between it and the appellant. Upon that appeal the peremptory mandamus order was unanimously reversed, a minority of the court, however, being of opinion that the Gerseta Corporation was entitled to an alternative mandamus (*Matter of Gerseta Corporation*, 200 App. Div. 890).

The record on the first of these appeals differs in a number of material respects from that which is now before us. There was no allegation in that record as to whether the parties to the controversy were members of the Silk Association of America (to which we shall hereafter refer as the " association.") It also failed to show the circumstances under which the association approved of the rules and regulations of the raw silk division, which are here under review.

The record on the second appeal likewise made no reference to the circumstances under which the raw silk rules were approved by the association, and the return in that proceeding alleged that contracts with provisions similar to that here appearing were

generally known in the trade, and that the practice was so universal that it was a trade custom to arbitrate differences arising out of sales of raw silk, in accordance with the raw silk rules. The record before us contains no such allegations.

The contract between the parties, under which respondent, the General Silk Importing Company, Inc., seeks arbitration, involved the sale of 100 bales of raw silk embodied in a printed form of contract prepared by the respondent, which had blank spaces therein filled in typewriting and which contained the following printed clause in the lower margin thereof: " Sales are governed by Raw Silk Rules adopted by the Silk Association of America." The question before us is whether the foregoing marginal printed statement carried with it an agreement of the parties to submit to arbitration any differences that might arise between them under the contract. The record upon this appeal shows that, at the time of the making of the contract, both of the parties were members of the Silk Association of America, but neither was a member of the division known as the raw silk division. Among the rules of the raw silk division is the following: " Arbitration. All differences arising between buyer and seller must be submitted to the Arbitration Committee of the Silk Association of America." The respondent contends that the arbitration clause just quoted must be read into the contract between the parties. A proper consideration of the question before us requires a study of the by-laws of the Silk Association of America, of the so-called rules or by-laws of the raw silk division, and of the circumstances under which the last-mentioned rules and by-laws were approved.

The American Silk Association is a national organization created under the laws of this State. Its by-laws provide that any person, firm or corporation engaged in the silk industry of the United States, or allied thereto, may become a member of the association. They also contain a provision under the heading, " Division Member," which reads as follows: " Sect. 5. A member elected by a Division under the Division by-laws which have been approved by the Board of Managers of the Association charging dues of the same amount or in an amount different from those charged by the Association, shall be a member of the Association and known as a Division Member, but he shall have only such privileges as are granted under such Division and shall have no vote or participate (*sic*) in the benefits of the Association or receive notices or reports except as is provided in the by-laws of the Division."

It is thus evident that one elected by a division, who has not been elected as a member of the general association, is limited to the privileges granted under the by-laws of the division.

Article VI is entitled " Division of Members." It enumerates eleven different divisions designated by letters beginning with " A," each referring to a branch of the silk business. The first is known as " Division A. Raw Silk — Importers, Dealers and Brokers." Section 4 of that article appears under the title " Organization of Divisions and Sub-Divisions," and reads as follows: " Each division or subdivision shall elect its own chairman and executive committee and such other committees as it may desire; shall, under arrangement with the executive committee of the association, occupy the rooms of the association for its meetings, and, through its chairman or executive committee, may report to or communicate with the association or its board or managers or executive committee upon any matter of direct interest to its special branch of the trade." Section 5 reads: " It shall be the duty of the executive committee of the different divisions of this association to formulate general rules and regulations for their government. *Such rules and regulations shall only become operative if approved by a majority vote of the board of managers* at a regular or special meeting, and such rules and regulations shall be amended from time to time as may seem necessary to the committee of the respective divisions, such amendments being *likewise subject to the approval* of the board of managers before becoming operative." (Italics ours.)

" Section 6. When division membership has been accepted by a member, he or it shall be subject to the by-laws of the said division. The acceptance of division membership is not compulsory."

It thus appears that the division is a subordinate body of the association with the right to establish its own special rules and regulations which must, however, be first approved by the board of managers of the association. It follows as of course that the rules or by-laws of a division have no binding power or effect upon a member of the association who is not a member of the division, and that they may not properly be regarded as the rules or by-laws of the association.

Article XII of the by-laws of the association, section 6, is entitled " Committee on Arbitration " and reads as follows: " The committee on arbitration shall have complete supervision of all *matters of arbitration referred* to the association and shall make rules and regulations for the conduct and disposition of all matters submitted in arbitration." (Italics ours.) It also provides that " any matter in controversy *may be referred by the disputants* signing the form of agreement provided by the committee, *together with a stipulation to the effect* that they will abide by the decision of the arbitrator or arbitrators selected and designating at their option either. (a) One of the persons named in list of official arbitrators who shall act as

First Department, April, 1922. [Vol. 200

sole arbitrator, or (b) Any two persons to act as arbitrators, who in turn shall designate from said list of official arbitrators a third person to be associated with them as arbitrators; or (c) The committee on arbitration of the silk association of America or a quorum thereof." (Italics ours.)

It is quite evident that, with respect to the matter of arbitration, the association has merely provided the machinery for conducting arbitrations which are specially referred to it, and that one of the prerequisites was to sign a formal stipulation to arbitrate according to its forms. There is no by-law, provision or rule of any kind which makes arbitration compulsory upon its members where differences may arise between them.

Bearing in mind the provisions of the by-laws governing membership in the Silk Association of America and those which control the raw silk division, we shall now consider the action of the association in approving the rules and regulations of the raw silk division. It appears that those rules and regulations as amended August 9, 1911, were approved by the board of managers of the Silk Association of America by the following resolution: " *Resolved,* that the amended raw silk rules and regulations to govern transactions between buyers and sellers on the raw silk market, have been carefully considered by the Board of Managers of the Silk Association of America and *approved* by them. The Board feels justified in *adopting* them as rules to govern (in the absence of other special agreements), the adjudication of all disputes or claims *which may be referred* to the Arbitration Committee of the Silk Association of America for settlement." (Italics ours.)

The rules of the raw silk division are set forth in detail, prefaced by a note which reads as follows: " It is understood that nothing in the following rules shall be construed as waiving the right in individual transactions to make any special or distinct contrary agreement, but that the rules shall govern only in cases where no special or specific contract exists." It is thus manifest that the by-laws of the association contemplate arbitration only when the parties had agreed thereto in the manner therein prescribed, and that arbitrations under the raw silk rules are intended to be binding upon the members of the raw silk division, unless there is a special or specific contract to the contrary.

It is to be noted that the formal resolution of the board of managers states that the raw silk rules were " approved." This was strictly in accordance with the provisions of the by-laws of the association. No by-law or rule of a division could be effective without such an approval. But an approval of a law or rule of a division does not constitute an adoption of the rule binding upon

general members of the association, who are not members of the division, since division rules and by-laws are only binding upon members of the division.

It was, therefore, inaccurate to state, as did the marginal printed clause in the contract between the parties, that " Sales are governed by Raw Silk Rules *adopted* by the Silk Association of America." It should have used the word " approved " instead of " adopted."

That a contract made subject to ·the raw silk rules does not necessarily imply an agreement that the parties would arbitrate in case of differences is apparent when one reads the statement of the board of managers following the resolution of approval, to the effect that the board feels justified " in *adopting them as rules* to govern (in the absence of other special agreements), the adjudication of all disputes or claims *which may be referred* to the Arbitration Committee of the Silk Association of America for settlement." In other words, the rules were " approved," so far as the raw silk division was concerned, and " adopted " by the association in the adjudication of all disputes which *may be referred* to its arbitration committee.

It also would seem that, when the board approved the raw silk rules, it did not mean that it adopted a rule of arbitration compulsory upon members of the association. Such an act would be contrary to the language and spirit of the by-laws of the association which, while providing rules for arbitration, make no suggestion that arbitration is compulsory.

This brings us to the crucial question in the case: Did the parties to the contract absolutely agree to arbitration by reason of the printed words, " Sales are governed by Raw Silk Rules adopted by the Silk Association of America? " One reading that phrase would be warranted in assuming that it was thereby intended to define the rights and obligations of the parties under the contract so that doubtful provisions therein might be interpreted in the light of the raw silk rules, and that many differences between them might thereby be eliminated, and not that it was intended to read into the contract the by-law providing for arbitration, which would only affect a remedy.

Before the enactment of chapter 275 of the Laws of 1920, known as the Arbitration Law (Consol. Laws, chap. 72), it was well settled that, where an agreement contained a provision for the appointment of arbitrators, so far as the agreement to arbitrate was concerned, it was subject to revocation at any time before there was a final submission to the arbitrators for their decision. (*People ex rel. Union Insurance Co.* v. *Nash,* 111 N. Y. 310; *Finucane Co.* v. *Board of Education,* 190 id. 77, 83.)

The Arbitration Law, however, was intended to give effect to an agreement to settle a controversy by arbitration by declaring that such an agreement shall be " valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (See § 2, as amd. by Laws of 1921, chap. 14.) But, although arbitration agreements in this State are now enforcible, that does not mean that the rules, heretofore applicable to the interpretation of contracts to determine whether the parties had agreed to arbitration, have been abrogated. Indeed, the Arbitration Law expressly recognized the importance of providing for a case where an alleged agreement to arbitrate is disputed. Section 3 thereof provides that " If the making of the contract or submission or the default be in issue, the court, or the judge thereof, shall proceed summarily to the trial thereof. If no jury trial be demanded by either party, the court, or the judge thereof, shall hear and determine such issue."

It is thus clear that, where the parties agreed to arbitrate, the courts, of course, will enforce such an agreement. But, on the other hand, since the contract to arbitrate presupposes an agreement to forego the right to resort to the courts for redress, an alleged contract to arbitrate, which is disputed, will be subjected to strict construction in order that the parties may not be deprived of their constitutional rights to seek redress in the courts.

In *Supreme Lodge* v. *Raymond* (57 Kans. 647, 653) the court said: " The right of resort to the courts will not be deemed to have been taken away by mere inference; and, if it can be done at all, it will only be where the restriction is stated in the clearest and most explicit terms."

In *Wallace* v. *German-American Ins. Co.* (41 Fed. Rep. 742, 743) the court used the following language: " It is undoubtedly competent for the parties to a contract to agree that damages claimed by either party under it shall be ascertained by an arbitration and that no suit shall be brought until after such an arbitration has been had; but a contract which is intended to deprive the parties to it of the right of an appeal to the courts for redress, or to place conditions and limitations upon that right, should be strictly construed."

In *Western Assurance Co. of Toronto* v. *Decker* (98 Fed. Rep. 381, 382) the court, referring to an arbitration agreement, said: " One of the fundamental and essential constitutional rights of the citizen is the right to appeal to a court of justice for a redress of his grievances. One of the chief ends of government is to secure this right to the citizen. While some courts hold that the citizen may, by contract, bargain away this right, the agreement to do so will not be extended by construction or implication."

On the previous appeal we had occasion to refer to the fact that it did not appear that the Gerseta Corporation was a member of the Silk Association, but we did not rest our conclusion solely upon that fact.   Moreover, even a member of the Silk Association of America familiar with the rules of the raw silk division, reading the printed phrase that the sale was " governed by the rules of the Raw Silk Division," without a specific reference including arbitration, would be justified in thinking that the rules applicable to the sale were intended to relate only to such of the rules as affect the rights and obligations of the parties under the contract, and not to a remedy for enforcing such rights and obligations.   We have heretofore made mention of the allegations in the answer to the petition in the mandamus proceedings between the parties, to the effect that there was a universal custom or practice in the silk trade, where a party enters into an agreement for the sale of raw silk subject to the raw silk rules, that it was generally understood that arbitration was included under such agreement.   Aside from the inherent improbability that a custom in the trade has interpreted a contract like the one under review as an agreement to arbitrate, there is no allegation of custom in the record before us.   It cites, however, two instances where the appellant had arbitrated under contracts of sale, which were subject to the raw silk rules, and five other arbitrations into which the appellant's predecessors had entered.   In two of the seven instances cited, the provisions of the agreements which referred to the raw silk rules appeared in the opening paragraph thereof, and in the remaining five it does not appear what the language of the agreements, if any, was, with respect to the raw silk rules or arbitration.   Besides there is no allegation showing whether in any of the cases mentioned arbitration was voluntary or not.   We thus find nothing in the record before us that impels us to change the conclusion which we reached upon the appeal from the previous order denying arbitration proceedings. Upon the facts before us we are of opinion that the respondent has not sustained the burden of proving that the minds of the parties had met in agreeing to submit their differences, under the contract, to arbitration.

The order granting the motion for arbitration must be reversed, with ten dollars costs and disbursements, and the motion denied.

DOWLING, LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied.