In the Matter of the Arbitration between REX P. RICCARDI, Appellant, and MODERN SILVER LINEN SUPPLY CO., INC., et al., Respondents.

First Department, June 27, 1974.

*Allan Richard Henis* for appellant.

*Lawrence I. Drath* of counsel (*Hoffberg, Margolies, Kenny & Drath,* attorneys), for respondents.

TILZER, J. Petitioner appeals from a judgment which denied a stay of arbitration. Respondents served a demand for arbitration pursuant to three contracts dated December 3, 1971, March 6, 1972 and January 1, 1973, claiming that petitioner breached the restrictive covenants contained in each of the agreements. The first two contracts provided generally in paragraph 7 as follows: " Except to the extent the Company elects otherwise pursuant to the provisions of paragraph 2(e) above, any controversy or claim arising out of or relating to this contract or any breach thereof, shall be settled by arbitration ".

Subdivision (e) of paragraph 2 provided as follows: " Any and all controversies, claims or disputes which may arise with respect to whether the Employee shall have violated any of the foregoing provisions of this paragraph 2 may be enforced by the Company, at its option, either by an action or proceeding in any court having jurisdiction or by arbitration in accordance with the provisions of paragraph 7 hereinafter."

The first two contracts also provided in paragraph 2 for certain restrictions upon petitioner's activities during and after he left his employment. More specifically, it was provided that petitioner would not disclose the name, address or requirements of any customer of the company nor would he divulge any other confidential information acquired during his employment. It was further provided, among other things, " that he [would] not for a period of one year after the end or termination of his employment * * * solicit, serve or cater to * * * any * * * firms or corporations that were customers of the Company * * * while he was employed by the Company ". (Par. 2, subd. [c].)

The first dated contract, i.e., December 3, 1971, indicated that the named contracting company was primarily doing business in Washington, D. C. and its vicinity, whereas the contract dated March 6, 1972, stated that the named contracting company was engaged in doing business in New York City and its vicinity. However, the petitioner's geographical area was not clearly defined and indeed, it was provided in each of the contracts that the company had other specifically named affiliates doing similar business and that petitioner might be " entrusted with the servicing of customers of one or more of the said affiliates of the Company." (par. 4). It was further provided that the covenants contained in paragraph 2 should apply to all customers of the affiliates.

The last dated contract, i.e., January 1, 1973, which designated petitioner as an independent contractor, as contrasted to an

employee, contained a broad arbitration clause, as follows: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration". (Par. 6, subd. [a].) There was no provision, as contained in the first two contracts, limiting arbitration with respect to certain issues only at the option of the employer.

The January 1, 1973 agreement provided that petitioner was hired "to solicit customers in the New York and New Jersey areas, to enter into contracts with the Company for the company to furnish its laundry and linen supply services to such customers". As in the first two agreements, the last contract also contained certain restrictive covenants. Petitioner was prohibited from divulging customers' lists or other confidential information and it was also provided: "for a period of two (2) years after the termination of this Agreement * * * he [would not] solicit * * * or obtain any business or contracts from any of the persons * * * or corporations which were customers of the Company at any time during the term of this Agreement * * * within * * * Washington, D. C., and the States of New York, New Jersey, Pennsylvania, Maryland and Virginia."

The petition sets forth numerous grounds in support of the request for a stay, some of which, however, relate solely to the contracts of December 3, 1971 and March 6, 1972. First, with respect to those contracts it is urged that the arbitration agreements are invalid since they "are not mutually binding". Of course, the enforceability of agreements to arbitrate is governed by the rules applicable to contracts (*Matter of Zimmerman* v. *Cohen,* 236 N. Y. 15; *Matter of General Silk Importing Co.,* 200 App. Div. 786, affd. 234 N. Y. 513), and as in any bilateral agreement both parties must be bound or neither is bound. (*Topken, Loring & Schwartz* v. *Schwartz,* 249 N. Y. 206.) But, that does not mean that the mutual promises must create in each of the parties identical rights and obligations or that the parties must be bound in the exact same manner. As stated in Corbin, Contracts (vol. 1A, § 161, p. 68): "No court or writer has maintained that the validity of a contract depends upon an objective equality of advantages or values. Each promise made by one party does not have to be matched by an equivalent promise made by the other. Each right or power or privilege possessed by one party does not have to have its counterpart in the other." It is only where the "want of mutuality would leave one party without a valid or available consideration for his promise" (9 N. Y. Jur., Contracts, § 10, p. 533) that the agreement is

necessarily unenforceable. (*L'Amoreux* v. *Gould*, 7 N. Y. 349.) Stated another way, "it is consideration that is necessary, not mutuality of obligation." (Corbin, Contracts, vol. 1A, § 152, pp. 5–6; see *Justice* v. *Lang*, 42 N. Y. 493.)

Guided by the above principle we cannot say that the arbitration provisions herein are unenforceable. Paragraph 2E is but part of the parties' over-all agreement to submit their controversies relating to the employment contract to arbitration. Construing paragraph 7 and paragraph 2E together, it is apparent that the parties exchanged binding promises to submit all controversies to arbitration (except those relating to the breach of restrictive covenants) at the election of either of the parties. Hence, the agreement to arbitrate is supported by consideration and therefore enforceable. Within the context of an otherwise binding agreement, the parties were free to carve out of that agreement one area of possible controversy, and to in effect, grant an option solely to the employer to choose the forum (i.e., arbitration or a court of proper jurisdiction), where that limited issue could be resolved.

The dissenters place reliance upon *Hull Dye & Print Works* v. *Riegel Textile Corp.* (37 A D 2d 946) where this court held unenforceable an arbitration agreement which provided as follows: "'Any controversy arising under or in relation to the contract or any modification thereof may be settled by arbitration or by suit in any Court having jurisdiction, as the Mill shall direct.'" A like result was also reached in *Matter of Kaye Knitting Mills* v. *Prime Yarn Co.* (37 A D 2d 951) where there was a virtually identical arbitration agreement. However, the arbitration agreements in those cases differed from the provisions now under consideration. In the two cited cases, the lack of mutuality extended to the entire agreement, since the option to arbitrate, which was vested in only one of the contracting parties, embraced the full scope of the agreement, i.e., any and all controversies. Thus, in each of those cases, the entire agreement was without consideration, a situation, which as discussed above, is not here present.

The question still remains, however, whether, despite the presence of consideration to support the arbitration agreement, subdivision (e) of paragraph 2 is severable from the remainder of the agreement to arbitrate and hence, because of its lack of mutuality, is unenforceable for want of consideration. (See *Noto* v. *Satloff*, 38 Misc 2d 915.) The terms of the contract not being in dispute, such is a matter of law to be resolved by the court (*Anheuser-Busch Ice & Cold Stor. Co.* v. *Reynolds*, 221

App. Div. 174). It seems, as previously indicated, that subdivision (e) of paragraph 2 should properly be considered in conjunction with paragraph 7, for the two paragraphs appear to be part of one entire scheme. Indeed, subdivision (e) of paragraph 2 refers to " arbitration in accordance with the provisions of paragraph 7 ", and paragraph 7 in turn refers back to subdivision (e) of paragraph 2. Accordingly, we conclude that subdivision (e) of paragraph 2 is not severable from the entire agreement to arbitrate and hence, since that agreement is supported by consideration, subdivision (e) of paragraph 2 is enforceable.

One other point should be mentioned with respect to the enforceability of subdivision (e) of paragraph 2. It is suggested that the court, by directing arbitration pursuant to the foregoing provision, is somehow reforming the agreements or depriving petitioner of his right of resort to the courts by mere inference. Of course, the court may not reform the agreement to include an arbitration clause not otherwise contained in the contract. Additionally, it must be established that the arbitration clause was consented to by the parties. Indeed, that was the problem presented in *Matter of General Silk Importing* (200 App. Div. 786, affd. 234 N. Y. 513, *supra*) where the contract between the parties did not contain an arbitration clause, and the question was whether the parties had agreed to be bound by certain rules promulgated by a division of the Silk Association. But, here it is clear that the parties agreed to the arbitration provisions and it is also clear that petitioner gave respondents the option to pick the forum to litigate any claims relating to breach of the restrictive covenants. The only question is whether such provision is enforceable and supported by consideration. As already stated, we conclude that the provision is supported by consideration, and since it is not against public policy, it should be enforced in the same manner as any other contract.

It is next argued that arbitration pursuant to the first two contracts should nevertheless be stayed because those agreements were superseded by the January 1, 1973 agreement which provided: " This agreement shall supersede all prior agreements and understandings between the parties respecting the subject matter hereof." However, it has been held time and again that the court is limited to determining only whether a valid arbitration agreement was entered into (see CPLR 7503), and where there is a broad arbitration provision, issues relating to subsequent acts which may effect a cancellation or termination of the prior contract are properly within the arbitrator's juris-

diction to decide. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Popular Pub.* [*McCall Corp.*], 36 A D 2d 927; *Matter of Electronic & Missile Facilities* [*Campbell*], 20 A D 2d 891.)

Lastly, it is argued, particularly with respect to the last contract, that the restrictive covenants are unconscionable, against public policy (petition par. 21), and indeed, " in restraint of trade and violate the provisions of federal anti-trust legislation ". The merits with respect to this issue are discussed fully in the opinion of Mr. Justice LUPIANO (concurring and dissenting in part) and we agree with the views stated therein. But, we would add the following comments: It is urged that a stay should be granted and that the court should determine after a hearing, whether the restrictive covenants are proper and required to protect the respondents' legitimate interests. Reliance is placed, for the most part, upon *Matter of Aimcee Wholesale Corp.* (*Tomar Prods.*) (21 N Y 2d 621) wherein the Court of Appeals held that the question of whether there was an unlawful discriminatory price reduction in violation of the Donnelly Act (General Business Law, § 340, subd. 1) involved issues of paramount public concern, and accordingly, that enforcement of such antitrust policies should not be left in the hands of arbitrators. (*Matter of Aimcee, supra,* p. 627.)

The problem with applying the doctrine in *Aimcee* (*supra*), to the matter *sub judice,* is that whereas in the *Aimcee* case the claimed illegality was specifically set forth, the petition herein is couched in such conclusory language that the court is required to speculate as to just how and in what manner the restrictive covenants (which as discussed hereinafter are valid on their face) are violative of public policy, and specifically section 340 of the General Business Law. Leaving aside for a moment the issues with respect to Donnelly Act violation, it should be pointed out, that to the extent that the petition rests upon claims of common-law unconscionability, such does not raise issues to be preliminarily determined by a court, but rather, those issues are for the arbitrators to decide. (See *Matter of Granite Worsted Mills* [*Cowen*], 25 N Y 2d 451; *Matter of All State Tax Serv.* [*Kerekes Bros.*], 34 A D 2d 935.) With respect to the claimed violation of the General Business Law (§ 340), although the petition does not contain any direct reference to such provision, nevertheless, it is now suggested that the restrictive covenants are indeed violative of that section. However, clearly, a restrictive covenant which is part of an

employment agreement is not violative of section 340 of the General Business Law, unless it is unreasonable. As stated in *Bates Chevrolet Corp.* v. *Haven Chevrolet* (13 A D 2d 27, 29): "It is axiomatic that a negative covenant against competition by an employee following the termination of his employment is generally enforceable, provided it is reasonably necessary for the protection of the employer and is reasonably limited as to time and place."

The covenants herein are limited in such manner. Unlike the covenant in *Paramount Pad Co.* v. *Baumrind* (4 N Y 2d 393), where the employee could not enter the industry without the permission of the former employer, petitioner herein is not prohibited "from performing the same type of services for [respondents'] competitors, wherever they might be located." (*Bates Chevrolet Corp.* v. *Haven Chevrolet,* 13 A D 2d 27, 30.) Petitioner is merely prohibited for a period of time (2 years) from soliciting or servicing those firms who were customers of the company during the period of the agreement. And, it is well decided that under appropriate circumstances, customers' lists are subject to protection, particularly with respect to a salesman who was in a position to learn the customers' special requirements and needs. (*Bates Chevrolet Corp.* v. *Haven Chevrolet, supra.*)

It is argued, nevertheless, that the January 1, 1973 agreement appears to be unreasonable on its face in that the restrictions may well have exceeded "the degree of protection to which the respondents are entitled in order to preserve their legitimate interests." (Dissenting opn. — Mr. Justice NUNEZ.) The reason for such conclusion is that in the last contract, whereas petitioner was hired to solicit customers in the New York and New Jersey areas only, the restrictions embraced not only those States, but also included Washington D. C., Pennsylvania, Maryland, and Virginia. Aside from the fact that such infirmity in the restrictive covenant was not claimed in the petition, the entire background of the contract supports the conclusion that such restriction is prima facie reasonable. Respondents were not dealing with a new employee but rather, with one who had been under contract previously and as such, had already been in a position to acquire knowledge of the respondents' activities and the particular requirements of its customers. Moreover, petitioner's previous area included not only New York and New Jersey but also Washington D. C. and its vicinity and his prior contracts provided that he could be called upon to service customers of affiliates doing business in still other geographic locations. Hence, even in the third agreement, respondents had

a legitimate interest in continuing to protect customers' lists with respect to the other jurisdictions as well. We conclude, therefore, that the petition is insufficient to raise any issue requiring a hearing as to whether the agreement is in violation of the General Business Law.

Accordingly, the judgment entered March 8, 1974, denying the petition, and directing the petitioner to proceed to arbitration should be affirmed.

NUNEZ, J. P. (dissenting). I would reverse and stay arbitration. The December 3, 1971 and March 6, 1972 contracts suffer from two infirmities. First, they are invalid for want of mutuality of obligation. (See *Matter of Kaye Knitting Mills* v. *Prime Yarn Co.,* 37 A D 2d 951 [1st Dept., 1971] and *Matter of Tunis Mfg. Corp.* v. *Mystic Mills,* 40 A D 2d 664 [1st Dept., 1972].) The provision in these two agreements, pursuant to which respondents sought to institute arbitration proceedings, is not a contract for arbitration, but rather a grant to respondents of a unilateral right to arbitrate. Neither party is required to arbitrate; respondents, because the agreement gives them the option to arbitrate or to litigate; petitioner, because the clause is not mutually binding and enforceable. Second, these two agreements were expressly superseded by the January 1, 1973 agreement. Subdivision (d) of paragraph 6 thereof provides: " This agreement shall supersede all prior agreements and understandings between the parties respecting the subject matter hereof." I would, therefore, grant a permanent stay of arbitration as to the aforesaid two agreements.

With respect to the agreement of January 1, 1973, I would remand for the purpose of determining, upon an evidentiary hearing, whether the restrictions therein set forth exceed the degree of protection to which the respondents are entitled in order to preserve their legitimate interests. The restrictive covenant is broadly drawn. Three affiliated companies are involved. Whereas the petitioner was hired to solicit customers in the New York and New Jersey areas only, the proscribed territory includes Washington, D. C., New York, New Jersey, Pennsylvania, Maryland and Virginia. The contract is terminable at will. The petition alleges that respondents and their affiliates conducted a business with annual volume approximating $10,000,000 and that at the time of the execution of the agreement petitioner earned $350 per week as their employee. The record clearly puts in issue the reasonableness of the restraint and whether the agreement unreasonably prevents the petitioner, respondents' former employee, from pursuing his occu-

pation without harm to respondents. "Whether a contract or any clause of the contract is unconscionable is a matter for the court to decide against the background of the contract's commercial setting, purpose, and effect" (*Wilson Trading Corp.* v. *David Ferguson, Ltd.,* 23 N Y 2d 398, 403). In seeking to stay arbitration petitioner further alleges that the employment agreements exacted from him are in restraint of trade and violate the provisions of the antitrust laws. (See U. S. Code, tit. 15, § 13 and New York General Business Law, § 340, subd. 1 [Donnelly Act].) New York's antitrust law protecting free competition represents a public policy of the first magnitude and its enforcement should not be left within the purview of arbitration. (See *Matter of Aimcee Wholesale Corp.* [*Tomar Prods.*], 21 N Y 2d 621; *Paramount Pad Co.* v. *Baumrind,* 4 N Y 2d 393.)

LUPIANO, J. (concurring in part; dissenting in part). This special proceeding was instituted by the petitioner for the purpose of obtaining a stay of arbitration in regard to the dispute delineated in the demand for arbitration served by respondents. The demand for arbitration alleges three separate agreements providing for arbitration which are respectively dated December 3, 1971, March 6, 1972 and January 1, 1973. "Breach of restrictive covenant provisions of said Agreements" is set forth as the "nature of dispute". The agreements of December 3, 1971 and March 6, 1972 are employment agreements containing identical provisions, except that the former is between petitioner and National Laundry Linen Service, a division of Modern Silver Linen Supply Co., Inc., and the latter is between petitioner and Premier Laundry of New Jersey, Inc. Paragraph 2 of these employment agreements sets forth the restrictive covenant provisions, and subdivision (e) thereof provides that "any and all controversies, claims or disputes which may arise with respect to whether the Employee shall have violated any of the foregoing provisions of this paragraph 2 may be enforced by the Company, *at its option,* either by an action or proceeding in any court having jurisdiction or *by arbitration in accordance with the provisions of paragraph 7 hereinafter*" (emphasis supplied). Paragraph 7 states: "*Except to the extent that the Company elects otherwise pursuant to the provisions of paragraph 2(e)* above, any controversy or claim arising out of or relating to this contract or any breach thereof, shall be settled by arbitration" (emphasis supplied). Patently, the petitioner cannot seek arbitration of a dispute with respect to breach of the restrictive covenant provisions of paragraph 2 against the wishes of the company.

In *Matter of General Silk Importing Co.* (200 App. Div. 786, 792 [1st Dept., 1922], affd. 234 N. Y. 513 [1922]), it was aptly observed 'that " although arbitration agreements in this State are now enforceable, that does not mean that the rules, heretofore applicable to the interpretation of contracts to determine whether the parties had agreed to arbitration, have been abrogated * * * It is thus clear that, where the parties agreed to arbitrate, the courts, of course, will enforce such an agreement. But, on the other hand, since 'the contract to arbitrate presupposes an agreement to forego the right to resort to the courts for redress, an alleged contract to arbitrate, which is disputed, will be subjected to strict construction in order that the parties may not be deprived of their constitutional rights to seek redress in the courts. In *Supreme Lodge* v. *Raymond* (57 Kans. 647, 653), the court said: ' The right of resort to the courts will not be deemed to have been taken away by mere inference; and, if it can be done at all, it will only be where the restriction is stated in the clearest and most explicit terms ' * * * In *Western Assurance Co. of Toronto* v. *Decker* (98 Fed. Rep. 381, 382), the court, referring to an arbitration agreement, said: ' One of the fundamental and essential constitutional rights of the citizen is the right to appeal to a court of justice for a redress of his grievances. One of 'the chief ends of government is to secure this right to the citizen. While some courts hold that the citizen may, by contract, bargain away this right, the agreement 'to do so will not be extended by construction or implication '." (See, also, *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 289; *Matter of ITT Avis* v. *Tuttle,* 27 N Y 2d 571; *Matter of Levin-Townsend Computer Corp.* [*Holland*], 29 A D 2d 925.)

Pursuing the arbitration provisions as they appear in the employment agreements, it is clear that the parties did not mutually promise to resolve *all* controversies by arbitration. The power to invoke arbitration in respect of disputes involving breach of the restrictive covenant provisions existed only at the option of the respondent companies. The petitioner as employee had no such right. Accordingly, the agreement to arbitrate such disputes was not mutually binding, for there was no reciprocal obligation upon the company to do so (see *Hull Dye & Print Works* v. *Riegel Textile Corp.,* 37 A D 2d 946 [1st Dept., 1971]). Since arbitration depends upon the agreement of the parties and mutuality of the right of invocation of arbitration with respect to disputes under paragraph 2 of the employment agreements is not present, there is no valid agree-

ment to arbitrate such disputes (*Matter of Kaye Knitting Mills v. Prime Yarn Co.,* 37 A D 2d 951 [1st Dept., 1971]). To hold that the employment agreements require arbitration of the dispute set forth in the demand is to reform the agreements without any equitable basis therefor. It has oft been noted that " equity will reform an instrument, but not make one " (6 N. Y. Jur., Reformation of Instruments, § 24, p. 571).

The agreement of January 1, 1973 between petitioner on the one hand and Premier Essex Linen Service, Inc., Modern Silver Linen Supply Co., Inc. and Premier Laundry of New Jersey, Inc. (respondents herein) on the other hand, sets forth the relationship between the parties on an independent contractor rather than on an employer-employee basis, and provides that it " shall supersede all prior agreements and understandings between the parties respecting the subject matter hereof " (par. 6, subd. [d]). Arbitration of " any controversy or claim arising out of or relating to this Agreement, or the breach thereof " is provided for, without the infirmity noted above in respect of the prior employment agreements (par. 6, subd. [a]). At issue is whether the restrictive covenant provisions of this agreement are so broad as to run afoul of the public policy of this State delineated in section 340 of the General Business Law. If so, then the covenants are void and arbitration may not be had. Essentially, petitioner, pursuant to the agreement of January 1, 1973, covenanted that for a period of two years after termination he would not solicit or obtain any business from parties who were customers of the respondents during the term of the agreement for the furnishing of laundry service (respondents' business) within the following territory: Washington, D. C. and the States of New York, New Jersey, Pennsylvania, Maryland and Virginia (par. 4, subd. [a]). Further, petitioner agreed that for a period of five years after termination he would not divulge any customer's lists of respondents or other secret or confidential information which is disclosed to or learned by him as a consequence of his employment by respondents (par. 4, subd. [b]).

Petitioner asserts in conclusory fashion that this agreement is " unconscionable, grossly unreasonable * * * violate[s] the public policy of this State and in the premises [is] unenforceable " and that the restrictive covenants enumerated above " are in restraint of trade and violate the provisions of federal anti-trust legislation ". On its face, the agreement of January 1, 1973, cannot be held as a matter of law to be violative of the public policy of this State (General Business Law, § 340). The

restraints are not general; appear reasonably limited in time and in geographic area and appear reasonably related to protection of the covenantee's interests. It was, therefore, incumbent upon the petitioner to demonstrate a prima facie showing that the restrictions are unreasonable under all the circumstances.

Respecting restrictive covenants, it has been observed that " in very early times such agreements were void as against public policy because they constituted a denial of the means of the covenantor to earn his living, but the tendency of modern thought has been no longer to uphold in its strictness the doctrine which formerly prevailed in this regard. The modern policy is to give contracting parties the widest latitude to make contracts with reference to their private interests and to uphold bargains made by them with their eyes open " (37 N. Y. Jur., Monopolies, Etc., § 40). Granted a restrictive covenant is to be strictly construed against the party responsible for its preparation, it is still the burden of the party seeking to avoid its consequence to demonstrate that such covenant is " an unreasonable restriction of the liberty of a man to earn his living or exercise his calling " (37 N. Y. Jur., Monopolies, Etc., §§ 40, 41; cf. *Paramount Pad Co.* v. *Baumrind,* 4 N Y 2d 393 [1958] where *on its face* the agreement unreasonably prevented the former employee from pursuing his occupation in that it provided that he could not accept any position in the shoulder pad industry without written permission of the covenantee). Upon making the requisite prima facie showing of unreasonableness, a party may justly be said to be within the ambit of the rationale delineated in *Matter of Aimcee Wholesale Corp.* [*Tomar Prods.*] (21 N Y 2d 621 [1968]) so as to warrant a stay of arbitration or at least a preliminary stay pending a hearing to determine whether the Donnelly Act (General Business Law, § 340) has been violated.

In their motion to dismiss the petition, respondents called attention to the deficiency of petitioner's showing in that " Petitioner has not alleged in what way the restrictive covenant is restraint of trade ", especially since the agreement on its face is not violative of antitrust law. No reply was made by petitioner. Accordingly, I would hold that the order of the Supreme Court entered March 8, 1974 should be modified by reversing so much thereof as dismissed the petition with respect to the employment agreements dated December 3, 1971 and March 6, 1972; the petition should be granted as to these two agreements and as so modified, the judgment should be affirmed.

Murphy and Lane, JJ., concur with Tilzer, J.; Nunez, J. P., dissents in an opinion; Lupiano, J., concurs in part and dissents in part in an opinion.

Judgment, Supreme Court, New York County, entered on March 8, 1974, affirmed, without costs and without disbursements.