In the Matter of the Arbitration between ALAN A. SCHACHTER et al., Respondents, and LESTER WITTE & COMPANY, Appellant.

First Department, May 11, 1976

*Arnold Buffum Lovell* of counsel *(Arnold Chase, Edward Matthew Kabak* and *Richard H. Altabef* with him on the brief; *Botein, Hays, Sklar & Herzberg,* attorneys), for appellant.

*Franz S. Leichter* of counsel *(Stephen P. H. Rachlis* with him on the brief; *Wachtell, Manheim & Grouf,* attorneys), for respondents.

NUNEZ, J. Petitioners-respondents Alan A. Schachter and Daniel M. Horan ("Schachter and Horan") were partners in respondent-appellant Lester Witte & Company, an accounting firm ("Witte", "the firm"). Following termination of their partnership agreement containing an arbitration clause, Witte instituted an arbitration proceeding against Schachter and Horan seeking recovery for alleged violations of the partnership agreement. Schachter and Horan petitioned for a stay of arbitration pending a trial as to whether the agreement containing the arbitration clause is void for fraud, duress, lack of mutuality or in restraint of trade and, therefore, in violation of public policy. Special Term held that the arbitration clause is not the kind of "broad" arbitration provision involved in *Matter of Weinrott (Carp)* (32 NY2d 190) and that

therefore the issues relating to the inception of the agreement and its validity are to be determined by the court. We disagree. The clause reads:

"21. ARBITRATION

"If any disagreement arises under this agreement, the controversy shall be settled by arbitration".

The clause in *Weinrott (supra,* p 196) recites: "All disputes, controversies or claims arising hereunder, the interpretation of any of the provisions or the performance called for thereunder shall be settled by arbitration".

The words "disputes", "controversies" and "claims" are synonymous with the word "disagreement". (See Webster's Third New International Dictionary.) And in the context employed, "hereunder" is synonymous with "under this agreement". In *Matter of Nationwide Gen Ins Co. v Investors Ins. Co.* (37 NY2d 91, 95 [June, 1975]) the Court of Appeals stated: "More typically the parties adopt a 'broad' arbitration clause agreeing generally to submit to arbitration all disputes arising out of the contract, or any dispute relating to the meaning and interpretation of the underlying agreement." As noted, here the parties agreed to arbitration "[i]f any disagreement arises under this agreement"—language almost identical with the phrase "all disputes arising out of the contract" quoted in *Nationwide (supra).* We conclude, therefore, that the within clause is "broad" within the holdings of *Weinrott* and *Nationwide (supra)* and, consequently, the issue of fraud in the inducement is to be determined by the arbitrator. The court is only required to resolve the claim that the arbitration clause itself (as differentiated from the validity of the underlying agreement) was fraudulently induced. (8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.25, 1975 Supp, p 75-26.)

Likewise, the question whether the agreement is void for lack of mutuality is for the arbitrator, not the court. *(Matter of De Laurentiis [Cinematografica],* 9 NY2d 503, 509; *Matter of Weinrott [Carp], supra; Matter of Exercycle Corp. [Maratta],* 9 NY2d 329; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.23, pp 75-23.3—75-23.4.) As to the claim of duress in the inducement of a contract, we have most recently held that we perceive little, if any, difference between fraud and duress and that duress should be treated the same as a claim of fraud and is to be decided by the arbitrator. *(Candid Prods. v SFM Media Serv. Corp.,* 51 AD2d 943). "Fraud, undue influence, and duress would seem all to be of the same species" (Encyclope-

dia, 7 NY Contracts Law, § 1901. See, also, Restatement of Contracts, § 499). Accordingly, the issues of fraud, duress and lack of mutuality are, in view of the broad arbitration clause, for the arbitrator.

Remaining is the claim that the partnership agreement's provisions constitute an illegal restraint of trade. And while the enforcement of our State's antitrust policy cannot be left to commercial arbitration (*Matter of Aimcee Wholesale Corp.*, 21 NY2d 621), it is incumbent upon a party to demonstrate a *prima facie* showing that the restrictions are unreasonable under all the circumstances when the agreement, on its face, cannot be held as a matter of law to be violative of the public policy (General Business Law, § 340) of this State. (*Matter of Riccardi [Modern Silver Linen Supply Co.]*, 45 AD2d 191, affd 36 NY2d 945.) We examine, therefore, the allegedly offending provisions. Schachter and Horan were members of a national accounting firm. Schachter, upon becoming a partner brought several accounts to the firm; Horan did not. Accordingly, each was to be compensated differently. Schachter was to receive both "income points," reflecting services rendered, and "equity points," reflecting the value of the clientele he contributed to the firm. Horan was to receive only "income points." Upon withdrawal or removal from the firm, a partner is entitled to receive five annual payments in settlement of his former interest in the firm. And those payments reflect, if appropriate, "equity points".

The agreement further provides, in the case of a withdrawing "equity point" partner, that if he renders professional services to any of the firm's clients, the annual payments due him shall be reduced according to a formula. And if the final computation exceeds the payments due, the withdrawing partner shall pay the difference to the firm.

When an "income points" only partner withdraws or is removed, the former partner agrees not to render professional services to a client of the firm for two years. Violation of that covenant causes any payments due to be reduced by an amount equal to 200% of the fees charged to such clients in the preceding year. If that amount exceeds the removed partner's payments due him, the difference is to be paid immediately to the firm.

Briefly stated, an "income points" partner is prohibited from dealing with the firm clients for two years. As to an "equity points" partner, the duration of the prohibition

against dealing with the firm clients is not enumerated but we find from a reading of articles 18 and 19 of Appendix B to the National Agreement, that there is a five-year limitation. The restraints are not general, appear reasonably limited in time and appear reasonably related to Witte's legitimate interests. Nor are Schachter and Horan prohibited from practicing their profession in any way except that they may not render services to Witte's clients. (See *Riccardi, supra; Bates Chevrolet Corp. v Haven Chevrolet,* 13 AD2d 27; *Service Systems Corp. v Harris,* 41 AD2d 20.)

The affidavits and petitions merely assert conclusorily that the provisions of the agreement are in restraint of trade and thus Schachter and Horan have failed to set forth substantial factual support for their antitrust allegations to properly raise the issue. *(Matter of Riccardi [Modern Silver Linen Supply Co.],* 45 AD2d 191, affd 36 NY2d 945, *supra; Matter of Pasch [Chemoleum Corp.],* 26 Misc 2d 918, affd 13 AD2d 470.)

The announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. Generally, it is for the courts to decide "whether the parties have agreed to arbitrate the particular dispute." *(Steelworkers v American Mfg. Co.,* 363 US 564, 570-571.) We confine ourselves to the arbitration clause and leave the over-all contract to the arbitrators. Indeed, the courts are prohibited from considering "whether the claim with respect to which arbitration is sought is tenable, or otherwise pass[ing] upon the merits of the dispute." (CPLR 7501.)

The judgment entered in the Supreme Court, New York County (ASCH, J.) on September 25, 1975 granting a stay of arbitration should be reversed on the law and the application to stay arbitration denied with costs and disbursements.

KUPFERMAN, J. (dissenting). While I would affirm on the decision of Special Term (ASCH, J.) as a matter of the proper exercise of discretion, I think it should be pointed out that this court, in reversing, takes a most contradictory position. It first decides that the matter is one for the arbitrator and not for the court. It then inserts itself into the controversy coming to seeming conclusions, albeit erroneously on both counts, about the merits.

STEVENS, P. J., MARKEWICH and LUPIANO, JJ., concur with NUNEZ, J.; KUPFERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on September 25, 1975, reversed, on the law, and vacated, and the application to stay arbitration denied. Appellant shall recover of respondents $40 costs and disbursements of this appeal.