■ BERNARD NUSSDORF et al., Respondents, v ESSES AND CO., INC., et al., Appellants. (Appeal No. 1.) CHESEBROUGH-POND'S, INC., Plaintiff, v EVERYONE'S STORES, INC., Appellant, and QUALITY KING DISTRIBUTORS, INC., Respondent, et al., Defendants. (Appeal No. 2.)—Judgment [Appeal No. 1], Supreme Court, New York County, entered February 21, 1978, granting a stay of arbitration and denying defendants' motion to compel arbitration, is unanimously reversed, on the law, vacated and the motion to stay arbitration is denied and the motion to compel arbitration is granted. Respondents-appellants shall recover of petitioners-respondents $40 costs and disbursements of this appeal. Order [Appeal No. 2], Supreme Court, New York County, entered January 17, 1978, denying arbitration, is reversed, on the law, and the motion granted to the extent of staying the defendants' cross claims and compelling arbitration. Appellant shall recover of respondent $40 costs and disbursements of this appeal. Esses and Co., Inc., Harry and Samuel Esses, Gabriel Dana and the Nussdorfs entered into a written joint venture agreement. The corporation and Dana are the owners of all the outstanding and issued shares of Everyone's Bargain Stores. The corporation is the owner of all the outstanding and issued stock of the corporation owning the leases of the various stores operated by Everyone's Bargain Stores (hereinafter referred to as Everyone's). Esses and Co., Inc., holds the sole offices of Everyone's and the Nussdorfs are the sole officers of Bard Beauty and Barber Supply Co. In essence, the joint venture (to be known as E & B Enterprises) provided for the transfer of shares of stock of Everyone's and Bard to the joint venture to co-ordinate the operation of the corporations for the mutual profit of the joint venture, and setting forth their understanding with respect to ownership of stock, stock voting rights and the operation of Everyone's and Bard. The agreement contained an arbitration clause about which we are concerned. On December 31, 1975, a written

supplementary agreement was entered into to provide for certain estate planning and financial additions and modification of the original agreement and to add the names of Glenn and Stephen Nussdorf. Subsequently, Bard was incorporated as Quality King Distributors, Inc. Although the agreement was not fully implemented, certain stock transfers never having taken place, nevertheless the parties performed consistent with certain other terms of the agreement. Quality terminated the joint venture agreement and Special Term chose to treat the agreement with its arbitration clause as abandoned and a nullity. In *Matter of Riccardi v Modern Linen Supply Co.* (45 AD2d 191, 195), this court said: "However, it has been held time and again that the court is limited to determining only whether a valid arbitration agreement was entered into (see CPLR 7503), and where there is a broad arbitration provision, issues relating to subsequent acts which may effect a cancellation or termination of the prior contract are properly within the arbitrator's jurisdiction to decide." There being a valid arbitration agreement, collateral questions must be left to the arbitrator. Special Term therefore should have left the resolution of this question to the arbitrator. Also at issue here is Everyone's standing to compel arbitration since it was not a signatory to the joint venture agreement as such, although Everyone's principal officers and stockholders signed in their individual capacities. All parties here, including Everyone's, adhered to specific provisions of the agreement for a five-year period and Everyone's, by act and deed over the period of years, gave every indication that it was bound by the agreement. *Fisser v International Bank* (282 F2d 231, 233) is clear that "the variety of ways in which a party may become bound by a written arbitration provision is limited only by generally operative principles of contract law." The court puts it more precisely where it observes (p 234) that "the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all." Thus we see that Everyone's was bound by the agreement, had an obligation to arbitrate and standing to compel arbitration. We find that the provisions of the agreement, which allegedly violate public policy, were never implemented; consequently, we do not reach that issue. Concur [Appeal No. 1]—Murphy, P. J., Birns, Silverman, Evans and Lynch, JJ. Concur [Appeal No. 2]—Murphy, P. J., Birns, Evans and Lynch, JJ.; Silverman, J., dissents in a memorandum as follows: In the *Chesebrough-Pond's* case I would affirm the order denying the motion to compel arbitration. Although the dispute here involved is closely related to the disputes involved in *Nussdorf v Esses,* as to which we are ordering arbitration, the party seeking to compel arbitration in the *Chesebrough-Pond's* case, Everyone's Stores, Inc., was not a party to any arbitration agreement. The original agreement dated November 1, 1972 contains an arbitration clause, names the parties to it, and is signed by the parties to it, and Everyone's is not named as a party nor did it sign the agreement. The possibility that this is an oversight would seem to be refuted by the fact that a supplementary agreement was executed three years later on December 31, 1975, to which two additional persons affixed their signatures and agreed to be bound, but still Everyone's did not become a party to or sign the agreement. The fact that Everyone's is now willing to have arbitration does not change the situation. "It should be clearly manifest that the parties adopt arbitration as their exclusive remedy before any party should be forced into arbitration. Here the agreement to arbitrate was not mutually binding for there was no reciprocal obligation upon the seller to do so (see *Hull Dye & Print Works v. Riegel Textile Corp.,* 37 A D 2d 946)." *(Matter of Kaye Knitting Mills [Prime Yarn Co.],* 37 AD2d 951.)