OPINION OF THE COURT
Herman Cahn, J.
Defendant Harlow Meyer Savage, Inc. (HMS) moves for a preliminary injunction enjoining plaintiffs from engaging in any business competitive with HMS in the New York metropolitan area, or any other geographical area set forth in plaintiffs’ employment agreements with HMS and for an order restraining additional counterclaim defendant Cantor Fitzgerald Associates, L. P. (Cantor Fitzgerald) from employing plaintiffs or any other present or former employees of HMS who are or were employed by HMS pursuant to employment agreements containing noncompetition provisions.
On August 24, 1995 this court (Gammerman, J.) issued a temporary restraining order (TRO) against plaintiffs and Cantor Fitzgerald on condition that HMS continue to pay plaintiffs base salary. Upon application to the Appellate Division, First Department, for an order vacating the TRO or in the alternative accelerating the return date on the motion for a preliminary injunction, the Appellate Division (Rosenberger, J.) directed that a hearing commence on August 30, 1995 or that the TRO be vacated against the individual plaintiffs only. This court held a hearing on August 30, 1995.
This is a declaratory judgment action seeking a declaration that the restrictive covenant not to compete contained in plaintiff’s employment agreements are unenforceable. Plaintiffs were employed by HMS as brokers on the "forward dollar/ mark” desk. That trading desk consisted of seven brokers including plaintiffs. At some point during the employment, each was offered an employment agreement, and each signed such agreement. The original agreements have been renewed several times. The latest renewal terminates on January 31, 1997. Each receives a base salary well in excess of $100,000 per annum plus substantial bonuses. When the agreements were presented to plaintiffs, each had the opportunity to consult counsel before deciding whether to enter into the agreement. Apparently, most or all of them did consult counsel.
The agreements contained benefits for both sides. The employee was assured employment for the term of the agreement, while-the employer obtained the benefit of a no-compete clause. In fact, the testimony showed that HMS entered the agree *483 ments just to protect itself from the damages of a raid on its employees by a competitor, which might well put it out of business.
The employment agreements contain restrictive covenants which provide in relevant part:
"7. Non-Competition.
"7.1 During Employee’s employment hereunder, or for a period of six months following the termination of such employment pursuant to Section 6.3 or Section 6.4 (such periods, the 'Restriction Period’), the Employee shall not, in any manner, directly or indirectly, as an officer, director, employee, stockholder, partner, associate, consultant, owner, agent, creditor, coventurer or otherwise, be or become interested in or be associated with any other corporation, firm, business or person engaged, in a business competitive with that of the Corporation prior to the termination of such employment, within the New York Metropolitan Area, the Los Angeles greater Metropolitan Area, the greater Toronto Metropolitan area, the greater London Metropolitan Area, and Continental Europe * * *
"7.2 The Employee acknowledged that his skills and position are unique and, therefore, that the breach, or threatened breach, by him of the provisions of this Section 7 shall cause irreparable harm to the Corporation, which harm can not be fully redressed by the payment of damages to the Corporation. The Employee also acknowledges that affiliates of the Corporation are in the same line of business as the Corporation and have their offices in Los Angeles, CA and Toronto, Ontario, Canada, and that a business competitive with that of the Corporation may be carried on anywhere within the United States as a result of the unique use by such businesses of telephonic and other advanced communications techniques. Therefore, the Employee acknowledges that the geographical application of Section 7 is reasonable under the circumstances. Accordingly, the Corporation shall be entitled, in addition to any other right or remedy it may have, at law or in equity, to an injunction, without the posting of any bond or other security, enjoining or restraining the Employee from any violation or threatened violation of Section 7 * * *
"7.3 As additional consideration for the restrictions upon Employee under the provisions of this Section 7 and of Section 8, the Corporation shall, during the Restriction Period, continue to pay the Employee the Base Salary being paid to him on the date of termination of this Agreement in the same *484 manner as such Base Salary had been paid to the Employer prior to the termination of this Agreement. Upon any breach by the Employee during the Restriction Period of his obligations under Section 7, the Corporation’s obligation to pay the Base Salary shall immediately cease.”
The latest renewal agreement amended the restrictive covenant in part to provide:
"7.1 (a) For the purposes of this Section 7.1, (i) the term 'Corporation’ shall include any company which controls the Corporation, which is controlled by the Corporation or which is under common control with the Corporation, and (ii) a business competes with the business of the Corporation if it engages in any line of business which the Corporation conducts during the term including but not limited to currency transactions or transactions in any money instruments, debt instruments, equities or commodities, on a current, future or option basis as principal, agent or broker.
"7.1 (b) If the provisions of this Section 7.1 are deemed to be overbroad and, or otherwise, unenforceable by any court before which a dispute concerning this Section 7.1 is being determined, such court may limit the operation of this Section 7.1 so as to give it the effect intended, to the fullest extent permitted by law.”
On August 8, 1995 plaintiffs unilaterally resigned from HMS and commenced employment with Cantor Fitzgerald, a direct competitor. HMS sought to enforce the restrictive covenants in plaintiff’s employment agreements and plaintiffs commenced this declaratory judgment action.
Essentially, plaintiffs argue that they are being deprived of an opportunity to earn their livelihood. They argue that if the restrictive covenant is enforced and they are kept from working for six months — even if they are paid — they will have lost the ability to generate significant business because of the failure to maintain long-term relationships with clients during those six months. They further argue that their jobs are not unique, pointing to the fact that since they have left they have been replaced at HMS by other brokers.
HMS argues that plaintiffs are unique employees because they have developed relationships with clients over the course of their terms of employment. This was done largely at HMS’ expense and encouragement through socializing and entertaining these clients to maintain business. HMS also argues that since plaintiffs left their employ there has been a dramatic decrease in trading volume and profit at the forward mark *485 desk. Moreover, HMS argues that the replacement brokers will take at least six months to develop the relationships that plaintiffs had with their clients.
Upon a motion for preliminary injunction the movant must show (1) a likelihood of success on the merits; (2) irreparable harm; and (3) a balance of the equities in its favor. (Grant Co. v Srogi, 52 NY2d 496.) Although the courts of New York have adopted a strict approach in construing noncompetition agreements and restrictive covenants, the courts have repeatedly enjoined employees from breaching such agreements when they are reasonable in scope, duration and geographical area. (Gelder Med. Group v Webber, 41 NY2d 680; Reed, Roberts Assocs. v Strauman, 40 NY2d 303; Matter of Schachter, 52 AD2d 121, affd 41 NY2d 1067.) While powerful public policy considerations militate against enforcement of restrictive covenants (see, Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496; Purchasing Assocs. v Weitz, 13 NY2d 267), "[a]t the same time, the employer is entitled to protection from unfair or illegal conduct that causes economic injury. The rules governing enforcement of anticompetitive covenants and the availability of equitable relief after termination of employment are designed to foster these interests of the employer without impairing the employee’s ability to earn a living or the general competitive mold of society.” (American Broadcasting Cos. v Wolf, 52 NY2d 394, 404.) "Acknowledging the tension between the freedom of individuals to contract, and the reluctance to see one barter away his freedom, the State enforces limited restraints on an employee’s employment mobility where a mutuality of obligation is bargained for by the parties”. (Post v Merrill Lynch, Pierce, Fenner & Smith, 48 NY2d 84, 89.) "Indeed, the modern trend in the case law seems to be in favor of according such covenants full effect when they are not unduly burdensome” (Mohawk Maintenance Co. v Kessler, 52 NY2d 276, 284 [citations omitted]).
In a recent action entitled Harlow Meyer Savage v Saez (index No. 101852/95) Justice Gammerman held in a decision dated February 27, 1995, that a virtually identical restrictive covenant as that contained in plaintiffs’ employment agreement was enforceable and granted a motion for preliminary injunction. By order dated April 20, 1995 the Appellate Division, First Department, denied a motion to vacate the preliminary injunction. In that action, Saez was employed by HMS as a currency trader pursuant to an employment agreement substantially similar to the one at issue in this action, and left *486 for another firm, counterclaim defendant Cantor Fitzgerald. Justice Gammerman granted a motion for preliminary injunction by HMS finding that Saez has unique relationships with his customers and, therefore, the six-month restrictive covenant was reasonable.
The testimony at the hearing showed that plaintiffs all have unique relationships with the customers with whom they have been dealing that have been developed while employed at HMS and, partially, at HMS expense. The testimony also adequately showed that approximately six months is needed for a new employee to build such a relationship, and bring business back to its normal level. The evidence adequately showed that a trader’s absence from trading for six months does not render him unemployable within the industry or substantially impair his ability to earn a living. The relationships previously developed with customers can be renewed after that time.
Accordingly, this court finds that the restrictive covenants at issue herein are reasonable on condition that plaintiffs continue to receive their salaries for six months while not employed by a competitor. The restrictive covenants are reasonable in that each protects the employer from severe economic injury while — at the same time — it protects the employee’s livelihood, by requiring that he be paid his base salary. The duration of six months is reasonable because that is the amount of time HMS needs to recover from plaintiff’s departure; it is not unduly long so as to cause permanent injury or loss of ability to earn a livelihood.
The cases relied on by plaintiffs and Cantor Fitzgerald are distinguishable. In Scott Paper Co. v Finnegan (101 AD2d 787) the Court held that the defendant’s services were not unique and that his employment by a competitor would not give the competitor an unfair advantage. In the instant action plaintiffs have developed unique relationships with their customers and their employment by Cantor Fitzgerald would give it an unfair competitive advantage over HMS. Similarly, plaintiffs’ reliance upon Titus & Donnelly v Poto (205 AD2d 475) is misplaced. The action involved a restrictive covenant that had already expired. Additionally, Quandt’s Wholesale Distribs. v Giardino (87 AD2d 684) relied on by plaintiffs is inapposite. In that action the plaintiffs sought injunctive relief on the grounds that its former employee was familiar with plaintiff’s customs and business methods which was not unique. In the instant action, plaintiffs’ relationships with their customers are unique.
The court notes that virtually all the remaining cases relied on by plaintiffs and Cantor Fitzgerald involved employees *487 whose services were not unique and/or restrictive covenants that did not provide for payment of salary during their duration. The court also finds unpersuasive the argument that the fact that plaintiffs’ employment agreements provide that HMS may unilaterally exercise an option not to enforce the restrictive covenant distinguishes this action from Suez (supra). It is a distinction without a difference and irrelevant to the motion for a preliminary injunction as HMS has not exercised such option.
Accordingly, HMS has established a likelihood of success on the merits, irreparable harm and a balancing of the equities in its favor and the motion for a preliminary injunction is granted on condition that HMS pay plaintiffs’ salaries in lieu of an undertaking. The preliminary injunction will expire on February 7, 1996.