**LOCAL 416, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL–CIO, Plaintiff,**

v.

**ABC CONTRACTORS, INC., Defendant.**

No. 69–C–197.

United States District Court, W. D. Wisconsin. March 31, 1970.

David Loeffler, Milwaukee, Wis., for plaintiff.

Neale D. Katz, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for the enforcement of an arbitration award. Defendant's motion to join Local Union Number 498, International Association of Bridge, Structural and Ornamental Iron Workers (Iron Workers) as an additional party defendant is presently before the court.

In its brief defendant outlines the "history of the case" primarily in terms of the allegations of the complaint. Defendant's argument for joining Iron Workers is based upon that "history." For the purposes of deciding this motion, I use that recitation of the facts.

Plaintiff, Local 416, Sheet Metal Workers International Association, AFL–CIO, (Sheet Metal Workers), claims that under its agreement with defendant, ABC Contractors, Inc. (ABC), the installation of sheeting work on pre-engineered metal buildings is under the jurisdiction of the Sheet Metal Workers. On August 27, 1968, ABC informed Sheet Metal Workers that sheeting installation would be performed by members of the Iron Workers. Pursuant to Article X of its agreement with ABC, Sheet Metal Workers commenced an action before the Local Joint Adjustment Board (Board). Following a hearing in which ABC actively participated, the Board unanimously decided that the decision by ABC to assign the work in question to Iron Workers was a violation of the agreement with Sheet Metal Workers. Liquidated damages of $10,000 were assessed against ABC. Sheet Metal Workers bring this action under Section 301 of the National Labor Relations Act, as amended, to enforce the award of the Board.

ABC informed Iron Workers that this § 301 action was pending, that ABC would be forced to use sheet metal workers in installing the sheeting on pre-engineered metal buildings, and that the iron workers then doing such jobs would have to be discharged. Pursuant to its agreement with ABC, Iron Workers moved for arbitration. After a hearing, an impartial arbitrator issued an Award and Opinion finding that Iron Workers were to be assigned all sheeting work on pre-engineered metal buildings and any change in the assigning of said work would be a violation of the Labor Contract between ABC and Iron Workers.

Defendant contends that it is caught between the conflicting claims of Sheet Metal Workers and Iron Workers. Pursuant to Rule 19, Federal Rules of Civil Procedure, ABC moves to join Iron Workers as an additional defendant because

"[I]n the absence of the joinder of the Iron Workers (1) complete relief could not be accorded between the Sheet Metal Workers and ABC, (2) any adjudication might impair or interfere with the ability of the Iron Workers to protect its members' interests, and (3) the Defendant, ABC, would be subjected to a substantial risk of incurring inconsistent obligations because of the conflicting inter-

ests of the Sheet Metal Workers and the Iron Workers." (Defendant's brief, p. 3).

I hold that Iron Workers should not be joined as an additional party defendant.

Plaintiff and defendant were parties to a labor contract under which "[g]rievances of the Employer or the Union, arising out of interpretation or enforcement" of the agreement were to be settled by a Local Joint Adjustment Board.

Unless that Board failed to act or was dead-locked, its determination was to be final and binding. Under such circumstances this court should decline to review the merits of the Board's award under the labor agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Supreme Court in *Enterprise, supra*, discussed the proper approach to be taken by courts reviewing arbitration awards:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in United Steelworkers of America v. Warrior & Gulf Navigation Co., *ante*, p. 574 [80 S.Ct. 1347], decided this day, the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level —disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements.

" . . . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." 363 U.S. at 596–597, 80 S.Ct. at 1360–1361.

As plaintiff suggests, this court is limited to determining if the Board's award is based upon a reasonable construction of the ABC–Sheet Metal Workers agreement and draws its essence from that agreement as a whole. The addition of Iron Workers as an additional party defendant is not essential to that determination. Iron Workers was not a party to the grievance procedure which culminated in the Board's award, nor was the ABC–Iron Workers Labor Contract considered by the Board in arriving at its decision. Therefore, Iron Workers cannot be joined to and bound by this § 301 action properly brought to enforce the Board's award not to determine which of the two unions should be given the jobs in question.

The Supreme Court recognized in Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), that it is not necessary that arbitration of a jurisdictional work assignment dispute be a trilateral proceeding. In *Carey*, the employer refused to arbitrate a work assignment dispute claiming that such jurisdictional disputes were within the exclusive domain of the National Labor Relations Board. In compelling arbitration, the Court noted that another union, which under its agreement with the employer also claimed the work, was not an essential party to the arbitration:

"Grievance arbitration is one method of settling disputes over work assignments; and it is commonly used, we are told. To be sure, only one of the two unions involved in the contro-

versy has moved the state courts to compel arbitration. So unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute. Yet the arbitration may as a practical matter end the controversy or put into movement forces that will resolve it." 375 U.S. 261 at 265, 84 S.Ct. 401, at 405–406 (1964).

For this court at this juncture to require joinder of Iron Workers and resolve the jurisdictional dispute on the merits, or to refuse to enforce the Board's award because the rights of Iron Workers would not also be determined, would be to undermine the arbitration process in disregard of the teachings of United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), and United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960).

Defendant relies on Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). In that case, Transportation-Communications Employees Union (T–C) and the Brotherhood of Railroad Clerks (Brotherhood) each claimed jurisdiction of newly created jobs. Union Pacific assigned the jobs to members of Brotherhood. T–C referred the dispute to the National Railroad Adjustment Board for resolution under the provisions of the Railroad Adjustment Act, 45 U.S.C. § 153, 1926, as amended (Supp. 1966). Brotherhood was notified of the referral, chose not to participate in the proceeding, but did warn of its intention to proceed to the Board should any of its members' jobs be threatened. The Adjustment Board found T–C to be entitled to the jobs and ordered Union Pacific to pay the T–C members who had been made idle because of the assignment of the work to Brotherhood members. T–C petitioned the Federal District Court to enforce the Board's award. The court dismissed the action holding that Brotherhood was an indispensable party to

settlement of the dispute. The Court of Appeals and the Supreme Court affirmed.

In a comparison of concepts of the Railway Labor Act and the National Labor Relations Act, "[e]ven rough analogies must be drawn circumspectly, with due regard for the many differences between the statutory schemes." Brotherhood of Railway Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). The Supreme Court in Transportation-Communication v. Union Pacific, *supra*, decided the duty of the Railroad Adjustment Board under Section 3 First of the Railway Labor Act, 45 U.S.C. § 153 First:

"  .   .   .   We granted certiorari in order to settle doubts about whether the Adjustment Board must exercise its exclusive jurisdiction to settle disputes like this in a single proceeding with all disputant unions present. .  .  .   We hold that it must." 385 U.S. at 160, 87 S.Ct. at 371.

The board designated to arbitrate the grievances of ABC and Sheet Metal Workers is not a statutory creation with a duty totally to resolve jurisdictional disputes. The Local Joint Adjustment Board is a creature of the contracting parties: a tool not required to settle jurisdictional disputes in a single proceeding. The duty of the Railway Adjustment Board more closely parallels the duty imposed upon the National Labor Relations Board. The duty of the NLRB under § 10(k) of the National Labor Relations Act to "determine the dispute" has been construed to require the NLRB to make an affirmative award of the work between the employees of the competing unions. N. L. R. B. v. Radio & Television Broadcast Engineers Union, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961).

ABC cites Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Association, 293 F.Supp. 1400 (S.D.N.Y.1968), aff'd 414 F.2d 1326 (2nd Cir. 1969), in support of its motion. In *C.B.S.*, the plaintiff sought

to compel joint arbitration of a work assignment dispute between two unions. Jurisdiction was based upon § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. Rejecting the defendants' argument that "separate contracts breed separate grievances and must be submitted to separate arbitrators," the court held that "[r]ational, meaningful and peaceful resolution of work assignment disputes . . . demand the appearance before the same tribunal of all of the parties to the dispute, not just the parties to the contract." The court fashioned the remedy of compelled multilateral arbitration. In defense of that remedy the court pointed out that if the dispute were to be resolved by the NLRB or by the court on the merits all three parties would be required to be present; that no case or statute forbids consolidation of the arbitration; and that the consolidation would be practicable, economical and convenient because such a procedure would avoid duplication of efforts and the possibility of conflicting awards.

*C.B.S., supra,* does not suggest an appropriate remedy for this case. It does not appear that ABC at any time requested or moved to compel joint arbitration. ABC submitted to and participated in two separate grievance procedures which culminated in inconsistent awards. A duplication of efforts ending in conflicting awards has already occurred.

Sheet Metal Workers do not ask this court to resolve the jurisdictional dispute on its merits nor to compel bilateral or multilateral arbitration. An award has been made. Sheet Metal Workers seek to enforce it. As was stated in American Sterilizer Company v. Local Union No. 832, 278 F.Supp. 637 (W.D. Pa.1968), a case cited by ABC:

> "Limiting the discretionary exercise of jurisdiction in cases involving arbitration of disputes arising under collective bargaining agreements is the strong admonition to the courts to be wary of involvement in the arbitration procedures which the parties themselves have selected as the means of resolving their differences." 278 F.Supp. at 640.

Window Glass Cutters League of America (AFL–CIO) v. American St. Gobain Corporation, 47 F.R.D. 255 (W. D.Pa., 1969), cited by ABC, is distinguished on the same grounds. In *St. Gobain* the defendant was faced with a suit to compel arbitration. Another union claiming jurisdiction over the work in question threatened to arbitrate the issue. The court granted the defendant's motion under Rule 19, Federal Rules of Civil Procedure, to join the other union. In analogizing *St. Gobain*, ABC states that "the dilemma faced by the employer with two arbitration awards and court action enforcing them is no different than a situation where the employer is being compelled to arbitrate." I do not agree. The court in *St. Gobain* recognized that the defendant sought to avert passing through two separate grievance procedures which end in inconsistent, yet binding results. In the present case a final and binding award has already been assessed by the Local Joint Adjustment Board.

This holding that ABC cannot force the joinder of Iron Workers in an action brought to enforce an arbitration award made pursuant to the ABC–Sheet Metal Workers contract is not inconsistent with a determination that prior to arbitration this court might have been empowered to compel multilateral arbitration in jurisdictional disputes.

For the reasons stated herein, defendant's motion to join Iron Workers as an additional party defendant is hereby denied.