THE STOP & SHOP COMPANIES, INC. *vs.* GILBANE BUILDING COMPANY & another.[1]

Suffolk.     September 20, 1973, — November 30, 1973.

Present:    TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Arbitration.*

In the absence of any agreement for multiparty arbitration in the arbitration clause of a contract between the owner of a plant and an architect for services in connection with its construction, a judge, upon the owner's bringing an action against the architect and the contractor, whose contract with the owner also included an arbitration clause, with respect to a dispute arising out of construction of the plant, was not authorized by G. L. c. 251, §·2 (a) or § 3, to order the defendants to arbitrate the dispute in a consolidated proceeding. [326-330]

CONTRACT AND TORT. Writ in the Superior Court dated August 16, 1972.

---

[1]Henschien, Everds, Crombie, Inc.

A motion was heard by *Kalus, J.*, and the case was reported by him.

*Carl M. Sapers* for Henschien, Everds, Crombie, Inc.

*Joseph L. Cotter* for Stop & Shop Companies, Inc.

BRAUCHER, J. In 1968, the Stop & Shop Companies, Inc. (the owner) contracted with Henschien, Everds, Crombie, Inc. (the architect) for services in connection with the construction of a beef processing plant. In 1969, the owner contracted with Gilbane Building Company (the contractor) for construction of the plant. Each contract contained an arbitration clause. A dispute arose with respect to the roofing insulation on the plant, and in August, 1972, the owner filed with the American Arbitration Association (AAA) a demand for arbitration against the architect and the contractor. The architect notified the AAA that it would not submit to such a multiparty arbitration, and the AAA later notified the parties that, "without the mutual agreement of the parties and absent a court order consolidating these proceedings," it would "administer these claims as two separate matters." It requested that the owner "file a separate demand on each contract in accordance with our normal procedure." A judge of the Superior Court has allowed the owner's motion to compel arbitration pursuant to the demand, and has reported the case for determination of the question of the owner's right to such an arbitration. We hold that, in the absence of an agreement for multiparty arbitration, a court order for such an arbitration is not authorized.

The owner brought an action in contract and tort against the architect and the contractor, and moved to compel arbitration pursuant to the prior demand. After the motion was allowed, the parties filed a statement of agreed facts and the judge reported the case to the Appeals Court. The case was transferred to this court pursuant to G. L. c. 211A, § 10 (A). The contractor joined in the statement of agreed facts, but made no objection to the arbitration demanded and filed no brief.

1. The agreement between the owner and the architect provides for arbitration of all disputes under the agreement "in

accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects.'' The record does not include a copy of the standard form referred to, nor does it disclose the procedure to be followed or the role of the AAA.[2] The owner and the architect, however, have argued the case on the footing that the demand for arbitration was proper apart from its multiparty aspect and that the standard form did not make any explicit provision with respect to multiparty arbitration.

The AAA, in its notice to the parties, indicated that it stands ready to administer a multiparty arbitration if there is ''a court order consolidating these proceedings.'' There is no showing, however, that the architect has agreed to participate in such an arbitration, or that it has delegated to the AAA or to a court the decision whether such an arbitration should be held. We must consider the case on the premise that the architect has not agreed to multiparty arbitration.

2. The owner's main argument does not rest on express or implied agreement by the architect to submit to multiparty arbitration. It rests rather on a line of New York cases holding that a court may in its discretion order consolidation of related arbitration proceedings if the issues are substantially the same and no substantial right is prejudiced. *Matter of Symphony Fabrics Corp. (Bernson Silk Mills, Inc.)* 12 N. Y. 2d 409 (1963). *Matter of Chariot Textiles Corp. (Wannalancit Textile Co.)* 18 N. Y. 2d 793 (1966). *Matter of Vigo S.S. Corp. (Marship Corp. of Monrovia)* 26 N. Y. 2d 157 (1970), cert. den. sub nom. *Frederick Snare Corp.* v. *Vigo S.S. Corp.* 400 U. S. 819 (1970). See Domke, Commercial Arbitration, § 27.02 (1968); Eager, The Arbitration Contract and Proceedings, § 110 (1971). Contra: *J. Brodie & Son, Inc.*

---

[2]The owner's demand for arbitration recites that there was agreement for arbitration under the ''Construction Industry Arbitration Rules,'' and demands arbitration thereunder. It refers to the AAA as ''Administrator.'' The record does not include those rules. Compare the procedures involved in *Roberto Constr. Co. Inc.* v. *Burnham-Manning Post # 1105 Veterans of Foreign Wars of the U. S. Inc.* 347 Mass. 400 (1964), and *Lincoln-Sudbury Regional Sch. Dist.* v. *Frasca Constr. Corp.* 354 Mass. 22 (1968).

328                                    364 Mass. 325

Stop & Shop Cos., Inc. *v.* Gilbane Bldg. Co.

v. *George A. Fuller Co.* 16 Mich. App. 137 (1969); *Wm. C. Blanchard Co.* v. *Beach Concrete Co. Inc.* 121 N. J. Super. 418 (1972).

Before 1962 the New York Civil Practice Act treated arbitration as a "special proceeding" and permitted consolidation of special proceedings "whenever it can be done without prejudice to a substantial right." *Matter of Symphony Fabrics Corp. (Bernson Silk Mills, Inc.)* 12 N. Y. 2d 409, 412 (1963). Under that authority the lower courts sometimes ordered consolidation of separate arbitrations between the same two parties. *Matter of Franc, Strohmenger & Cowan Co. Inc. (Designs by Stanley, Inc.)* 14 Misc. 2d (N. Y.) 370 (1954), affd. 283 App. Div. (N. Y.) 1049 (1954). *Matter of Adam Consol. Indus. Inc. (Miller Bros. Hat Co. Inc.)* 6 App. Div. 2d (N. Y.) 515 (1958). Consolidation was denied, however, where the result might be a difference in the individuals appointed as arbitrators. *Matter of Stewart Tenants Corp. (Diesel Constr. Co. Inc.)* 16 App. Div. 2d (N. Y.) 895, 896 (1962): " 'Arbitration is essentially a creature of contract' . . .. When the contracting parties have agreed upon an arbitral forum, to impose another upon either of them without consent would be to rewrite their agreement (cf. *Matter of Symphony Fabrics Corp.,* 16 A D 2d 473)." See *Met Food Corp.* v. *M. Eisenberg & Bros. Inc.* 59 Misc. 2d (N. Y.) 498, 500 (1969).

Consolidation has also been ordered in New York where A made a claim against B, and B sought indemnity from C. In those cases A and B joined in designating an arbitrator in such a way that C's participation in the choice of arbitrators was not affected, and C was held not entitled to object: "the desire to have one's action or special proceeding heard separately does not, by itself, constitute a 'substantial right.' " *Matter of Symphony Fabrics Corp. (Bernson Silk Mills, Inc.), supra,* at 412. See *id.* 16 App. Div. 2d (N. Y.) 473, 474-475 (1962); *Matter of Vigo S.S. Corp. (Marship Corp. of Monrovia)* 26 N. Y. 2d 157, 160 (1970). Since 1962 the same principles have been followed under the New York Civil Practice Law and Rules. An alternative basis for consolida-

tion is now found in a provision conferring jurisdiction to enforce an arbitration agreement. That provision "imports power to regulate the method of enforcement." *Matter of Chariot Textiles Corp. (Wannalancit Textile Co.)* 21 App. Div. 2d (N. Y.) 762, 764 (1964) (dissenting opinion), revd. on dissenting opinion 18 N. Y. 2d 793 (1966). See *Automated Personnel Intl. Inc.* v. *Stamper,* 33 App. Div. 2d (N. Y.) 748 (1969). In *System Structures, Inc.* v. *Blair Chevrolet, Inc.* 24 App. Div. 2d (N. Y.) 457 (1965), consolidated arbitration was denied in a situation like that in the present case. Cf. *Tanbro Fabrics Corp.* v. *Deering Milliken, Inc.* 35 App. Div. 2d (N. Y.) 469 (1971), affd. 29 N. Y. 2d 690 (1971).

We have no statutes corresponding to those relied on in New York. Moreover, we have followed the lead of other New York decisions in interpreting G. L. c. 251, inserted by St. 1960, c. 374, § 1 (the Uniform Arbitration Act for Commercial Disputes), to require that the court "adhere to the method established by the contract and forego the rewriting of the contract for the parties." *Matter of Lipschutz (Gutwirth)* 304 N. Y. 58, 63-64 (1952), quoted in *Roberto Constr. Co. Inc.* v. *Burnham-Manning Post 1105 Veterans of Foreign Wars of the U. S. Inc.* 347 Mass. 400, 404 (1964). In this case as in that one the agreement "admittedly provides for arbitration, and the method agreed upon has not been followed. The record does not sustain any contention that the . . . [architect] failed or refused to proceed to arbitration or denied the existence of the agreement to arbitrate. . . . The agreed method did not fail in any respect." *Id.* at 403-404. There was, therefore, no authority for an order by the judge under G. L. c. 251, § 2 (a) or § 3.

The owner contends that the Superior Court has the same discretion and power to order multiparty arbitration that it would have with respect to joint trial of proceedings at law or in equity, citing *Sullivan* v. *Boston Elec. Light Co.* 181 Mass. 294, 305 (1902), *Burke* v. *Hodge,* 211 Mass. 156, 158-159 (1912), and *Lumiansky* v. *Tessier,* 213 Mass. 182, 187-189 (1912). See G. L. c. 231, § 84A. We have taken the different view "that arbitration, once undertaken, should continue

freely without being subjected to a judicial restraint which would tend to render the proceedings neither one thing nor the other, but transform them into a hybrid, part judicial and part arbitrational." *Cavanaugh* v. *McDonnell & Co. Inc.* 357 Mass. 452, 457 (1970). "If the arbitration agreement provides a method of appointment of arbitrators, such method shall be followed." G. L. c. 251, § 3. Matters having to do with the procedure to be followed before the arbitrators are peculiarly for resolution by them.[3] *Local 469 Intl. Bhd. of Teamsters, etc.* v. *Hess Oil & Chem. Corp.* 226 F. Supp. 452, 455 (D. N. J. 1964). Cf. *Greenwich Marine, Inc.* v. *S.S. Alexandra,* 225 F. Supp. 671, 676-677 (S. D. N. Y. 1964), affd. on other grounds 339 F. 2d 901 (2d Cir. 1965). It was therefore error to direct multiparty arbitration.

3. Nothing said here is intended to deny the propriety of multiparty arbitration by consent. Indeed, apart from the architect's consent, if the agreement between the owner and the architect is followed in selecting the arbitrator or arbitrators under that agreement, and if the owner and the contractor agree upon the same selection, the arbitrator or arbitrators may have power to order consolidated proceedings. Or conceivably the question whether proceedings should be consolidated might be treated as a dispute subject to arbitration. Other possible methods of avoiding duplication and conflict may be conceived. We do not pass upon them. If multiparty arbitration is to become a standard procedure, arbitration clauses and the rules and procedures of the AAA and other concerned organizations should be redrawn to provide for it.

---

[3]We recognize that in some contexts judicial intervention may be justified on noncontractual grounds. As to labor disputes, see *Transportation-Communication Employees Union* v. *Union Pac. R.R.* 385 U. S. 157, 160-161 (1966); *Columbia Bdcst. Sys. Inc.* v. *American Recording & Bdcst. Assn.* 414 F. 2d 1326, 1328-1329 (2d Cir. 1969); *Local 416, Sheet Metal Wkrs. Intl. Assn. AFL-CIO,* v. *ABC Contractors, Inc.* 335 F. Supp. 646, 649-650 (W. D. Wis. 1970). As to disputes under contracts with the Federal government, see *Owens-Corning Fiberglas Corp.* v. *United States,* 419 F. 2d 439, 453-455 (Ct. Cl. 1969); *Liles Constr. Co. Inc.* v. *United States,* 455 F. 2d 527, 533-534 (Ct. Cl. 1972).

4. In accordance with the terms of the report, the order allowing the owner's motion to compel multiparty arbitration is reversed. The motion is to be denied.

*So ordered.*