W. J. MEGIN, INC. *v.* STATE OF CONNECTICUT ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued March 7—decision released May 27, 1980

*Louis R. Pepe,* for the appellant-appellee (plaintiff).

*William J. White,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee-appellant (named defendant).

*Richard W. Tomc,* for the appellee (defendant Scolite International Corporation).

PETERS, J. The dispositive issue on this appeal is the authority of the trial court to consolidate separate arbitration proceedings arising out of a single design change in a construction project. The plaintiff, W. J. Megin, Inc., a general contractor,

brought the present action to compel the consolidation of two separate pending arbitration proceedings, one with the defendant Scolite International Corporation, a project subcontractor, and one with the defendant state of Connecticut, the project owner. Each defendant objected to the proposed consolidation on the ground that there had been no express agreement to engage in multiparty arbitration; the defendant state of Connecticut further raised other defenses including the defense of sovereign immunity. The trial court, *O'Sullivan, J.,* initially ruled that, in the absence of appropriate contract provisions, the court lacked the power to order consolidation. Subsequently, upon amendment of the plaintiff's complaint, the court concluded that it might have the power to order consolidation but that such a power would at best be discretionary with the court and should not be exercised in the present case. From the subsequent rendition of a judgment in favor of each of the defendants, the plaintiff Megin has appealed. The state of Connecticut has cross appealed.

In the posture of this appeal, the following facts are undisputed: The plaintiff Megin and the defendant state of Connecticut entered into a general contract on June 26, 1975, for the construction of a project known as the Graduate Library Facilities at the University of Connecticut at Storrs. Several days later, on July 2, 1975, Megin entered into a separate contract with the defendant Scolite to furnish concrete insulating fill on the roofs of the buildings in this project; this contract bound Scolite to the same terms that bound Megin to the state of Connecticut. Some fifteen months later, in an effort to reduce the overall project cost, the state's architect revised the project design to eliminate the con-

crcte insulating fill that was to have been provided by Scolite. Megin issued a credit order to Scolite, cancelling its subcontract, on October 14, 1976.

Scolite initiated judicial proceedings on April 7, 1977, seeking lost profits for the alleged breach of its subcontract. These proceedings were stayed for arbitration, and Scolite thereupon duly made a demand for arbitration against Megin. Upon receipt of this demand, Megin made a demand for arbitration against the state of Connecticut. A few days later, on August 22, 1977, Megin moved for voluntary consolidation of the two arbitrations. When neither of the two defendants would agree to consolidation, Megin brought the present action applying, pursuant to General Statutes § 52-410,[1] for an order to consolidate.

Since, as we have frequently held, authority for arbitration must be derived from the agreement of the parties; *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 122, 318 A.2d 84 (1972); *Gores* v. *Rosenthal,* 150 Conn. 554, 557, 192 A.2d 210 (1963); *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646 (1961); *Amalgamated Assn.* v. *Connecticut Co.,* 142 Conn. 186, 191, 112 A.2d 501 (1955); and the relevant provisions of applicable statutory directives; cf. *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 434 A.2d 304 (1980); it is important to be clear what arbitral provisions

---

[1] Section 52-410 provides, in relevant part: "APPLICATION TO SUPERIOR COURT. A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement."

the contracts in question contained. In accordance with the mandate of General Statutes § 4-126c,[2] the contract between Megin and the state of Connecticut provided, in article 12, that "[a]ny dispute arising out of the awarding of the contract for this project . . . or performance thereunder, shall be submitted to arbitration under the rules of the American Arbitration Association." This provision was incorporated by reference into the subcontract between Megin and Scolite. The rules of the American Arbitration Association contain no explicit provision either for or against compulsory consolidation of separately initiated arbitrations. In the past, it has been the policy of the American Arbitration Association, as the trial court concluded, to permit consolidation only with the consent of all of the parties involved. This conclusion is amply supported by the record.[3]

---

[2] "[General Statutes] Sec. 4-126c. ARBITRATION OF PUBLIC WORKS CONTRACTS. Any dispute arising out of the awarding of a contract by the commissioner of administrative services or performance thereunder shall be submitted to arbitration under the rules of the American Arbitration Association and each contract entered into by said commissioner shall contain provision for arbitration under such rules."

[3] The record indicates that the policy of the American Arbitration Association with respect to requests for consolidation of separately initiated arbitration cases is, and has been for at least eighteen years, to consolidate whenever all the parties mutually agree or consolidation is ordered by an appropriate court. In a letter to Megin and the state concerning the proposed consolidation of the two arbitration proceedings, the regional director of the American Arbitration Association in Hartford wrote: "To do this, we need the consent and approval of the State Public Works Department and of Scolite International."

The preamble to the Construction Industry Arbitration Rules of the American Arbitration Association which would govern the proceedings in this case is not inconsistent with that policy. The preamble states that "to achieve orderly, economical and expeditious arbitration . . . the American Arbitration Association is available to administer cases under various specialized rules."

The issue before us is a narrow one. If the parties to two separate contracts have separately agreed that disputes arising out of the performance of their contracts shall be submitted to arbitration, but have not agreed, either in their contracts or at the time of the occurrence of a dispute, that arbitrations may be consolidated, does a court have the authority to compel consolidation? This is an issue of first impression for this court. Courts in other jurisdictions are divided. See annot., 64 A.L.R.3d 528 (1975). In our judgment, the better view, in light of our repeated emphasis on the central role played by the terms of a contract in determining the scope of arbitration, is that there is no judicial authority to enter such an order.

We have consistently held that the duty to arbitrate and the scope of that duty depend upon the terms of the agreement between the parties to a contract. *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 122, 318 A.2d 84 (1972); *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531 (1967) (*Frager I*); *Ginsberg* v. *Coating Products, Inc.,* 152 Conn. 592, 596, 210 A.2d 667 (1965). A party that has agreed to arbitrate certain matters cannot, for that reason alone, be compelled to arbitrate other matters that it has not agreed to submit to arbitration. *Frager* v. *Pennsylvania General Ins. Co.,* supra; *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 5, 110 A.2d 464 (1954).

We agree therefore with the view of those courts in other jurisdictions that deem improper a judicially-ordered consolidation of separate arbitral proceedings between different parties. See, e.g., *Consolidated Pacific Engineering, Inc.* v. *Greater*

*Anchorage,* 563 P.2d 252, 255 (Alaska 1977) ; *Atlas Plastering, Inc.* v. *Superior Court,* 72 Cal. App. 3d 63, 70–72, 140 Cal. Rptr. 59 (1977) ; *Louisiana Stadium & Exposition District* v. *Haber, Hunt & Nichols, Inc.,* 349 So. 2d 491, 493 (La. App. 1977) ; *Stop & Shop Companies, Inc.* v. *Gilbane Building Co.,* 364 Mass. 325, 329–30, 304 N.E.2d 429 (1973) ; *J. Brodie & Son, Inc.* v. *George A. Fuller Co.,* 16 Mich. App. 137, 142, 167 N.W.2d 886 (1969) ; *Hjelle* v. *Sornsin Construction Co.,* 173 N.W.2d 431, 439 (N.D. 1969) ; contra, *Grover-Dimond Associates* v. *American Arbitration Assn.,* 297 Minn. 324, 329–30, 211 N.W.2d 787 (1973) ; *Exber, Inc.* v. *Sletten Construction Co.,* 92 Nev. 721, 732, 558 P.2d 517, 523 (1976) ; *City Association of Supervisors & Administrators* v. *Board of Education,* 168 N.J. Super. 184, 402 A.2d 262, 264 (1979) ; *County of Sullivan* v. *Nezelek,* 42 N.Y.2d 123, 127–28, 366 N.E.2d 72 (1977). See generally, annot., 64 A.L.R.3d 528 (1975) and Domke, The Law and Practice of Commercial Arbitration § 27.02, p. 272 (1968). At least some of the cases permitting nonconsensual consolidation are readily distinguishable. In *Grover-Dimond Associates,* supra, the court dealt with a situation in which all of the parties had previously agreed to use the same arbitrators. The New York cases have a special statutory history not replicated elsewhere. See *Stop & Shop Companies, Inc.* v. *Gilbane Building Co.,* supra, 329, noting the differences in the statutory pattern of Massachusetts and New York. Domke, who advocates discretion to order consolidation where "the issues are substantially the same and . . . no substantial right is prejudiced," appears to rely heavily on the New York authorities and on cases where the arbitrators are the same. Domke, supra, 272–73.

The facts of this case illustrate that it is sound policy to require contractual consent to the consolidation of arbitration proceedings. It is by no means clear whether the state of Connecticut is bound, under its contract, to reimburse Megin for damages that Megin may be obligated to pay Scolite. In the motions on the pleadings, the trial court had no occasion to examine or to adjudicate the terms of the modified contract between Megin and the state of Connecticut that eliminated the work to be performed by Scolite. Although a dispute between different parties arises out of a single event, namely, the cancellation of one particular work project, the various parties may have negotiated in different ways for the allocation of the costs attributable to that event. Megin may, in other words, have agreed to assume all or part of the risk of loss for this cancellation in return for other consideration with regard to the project as a whole. Furthermore, even if the state of Connecticut is liable over for whatever damages are assessed against Megin, it has the right to postpone its liability until Scolite has established its case, and consequently to require Megin, as prime contractor and project manager, to manage litigation as well as performance under the contract.

We conclude by noting that nothing in this opinion should be taken to put into question the propriety of multiparty arbitration by consent. The parties may of course consent to such proceedings in their underlying contracts. The parties may of course agree to consolidation at a time subsequent to the execution of their contract. We need not now decide what conduct is sufficient to signal such consent, whether, for example, agreement upon the same arbitrators to resolve questions concerning the same

dispute arising under separate contracts is an implied agreement to consolidate, or confers upon the arbitrators the power to determine whether there is an agreement to consolidate. See *Stop & Shop Companies, Inc.* v. *Gilbane Building Co.*, 364 *Mass.* 325, 329–30, 304 N.E.2d 429 (1973). We hold only that without some form of consent there is no judicial authority to compel consolidation of arbitration proceedings.

The trial court was therefore not in error in refusing to order the consolidation sought by the plaintiff Megin. The court's judgment, although based on a theory of discretion that we do not sustain, is nonetheless supported by the reasons advanced in this opinion. *State* v. *Assuntino*, 180 Conn. 345, 353, 429 A.2d 900 (1980); *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978). In light of the conclusion that consolidation is unwarranted, we need not consider the issues raised in the state of Connecticut's cross appeal concerning the scope of its agreement to arbitrate and the impact of its right to sovereign immunity.

There is no error.

In this opinion the other judges concurred.