196 N.J. Super. 16 (1984)
481 A.2d 553
KALMAN FLOOR COMPANY, INC., A DELAWARE CORPORATION, PLAINTIFF-APPELLANT,
v.
JOS. L. MUSCARELLE, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, THIRD-PARTY PLAINTIFF,
v.
WAKEFERN FOOD CORP., THIRD-PARTY DEFENDANT, RESPONDENT.
KALMAN FLOOR COMPANY, INC., A DELAWARE CORPORATION, PLAINTIFF-APPELLANT,
v.
AMERICAN ARBITRATION ASSOCIATION, JOS. L. MUSCARELLE, INC., A NEW JERSEY CORPORATION, GEORGE H. FRIEDMAN AND CAROL MOFFATT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1983.
Submitted January 24, 1984.
Decided March 2, 1984.
*18 Before Judges MICHELS, KING and DREIER.
Merritt T. Viscardi argued the cause for appellant in No. A-4669-81T2 (Apruzzese & McDermott, attorneys).
Gerald W. Conway argued the cause for respondent in No. A-4669-81T2 Jos. L. Muscarelle, Inc. (Shannon Z. Taylor, on the brief).
No brief filed on behalf of respondent Wakefern Food Corp.
Apruzzese & McDermott, attorneys for appellant in No. A-2785-82T2 (Merritt T. Viscardi, on the brief).
Amdur & Friedrich, attorneys for respondents American Arbitration Association, George H. Friedman and Carol Moffatt in No. A-2785-82T2 (Robert M. Schwartz, on the brief).
Shannon Z. Taylor and Gerald W. Conway, attorneys for respondent Jos. L. Muscarelle, Inc. in No. A-2785-82T2. (Shannon Z. Taylor, on the brief).
*19 The opinion of the court was delivered by KING, J.A.D.
This appeal involves two questions of law pertinent to arbitration proceedings. They are: (1) is an agreement to arbitrate on demand of a general contractor enforceable where the subcontractor has no reciprocal right to compel arbitration, and (2) does the American Arbitration Association have the right, absent judicial order or consent of both parties, to submit to the arbitrators the issue of whether contractual disputes among an owner, general contractor and subcontractor, which arise out of the same construction project and have common factual issues, should be subject to consolidated arbitration? We conclude the answer is "yes" to both propositions and therefore affirm the Chancery Division on both appeals.

I

(A-4669-81T2)
Plaintiff, Kalman Floor Company, Inc. (Kalman), a Delaware corporation, entered into a subcontract with defendant, Jos. L. Muscarelle, Inc. (Muscarelle), a New Jersey corporation, to perform flooring installation on a building being constructed in New York. The contract price was $575,000. About $500,000 had been paid to Kalman when a dispute over the quality of the work arose. Under the subcontract plaintiff had agreed to supply concrete topping work on the floors and to furnish all labor, materials, tools and equipment for the job. Kalman was required to complete its work in compliance with the general construction contract between Muscarelle and Wakefern Food Corp. (Wakefern), the owner, subject to all of the obligations assumed therein by the general contractor for the flooring work subcontracted to Kalman.
The clause in dispute here is
32. This Subcontract shall be governed by and construed in accordance with the laws of the State of New Jersey. The Subcontractor shall not institute any action, in any wise relating to this Subcontract, against the Contractor and/or the latter's surety, except in a court of competent jurisdiction in the County of Bergen, State of New Jersey. Anything herein to the contrary notwithstanding, *20 the Contractor shall have the right to compel arbitration of any controversy arising hereunder in the County and State of New York before the American Arbitration Association, in accordance with its rules then obtaining.
In this action the plaintiff sought to stay and the defendant sought to compel arbitration before the American Arbitration Association (AAA). The defendant Muscarelle prevailed and prevented a stay of arbitration. This appeal followed.
In support of defendant Muscarelle's position, its vice-president certified that he had conducted major negotiations with the owner, Wakefern, over a dispute arising from the prime contract. The dispute "extensively, if not exclusively" involved Wakefern's contention that the "Kalman Deferred Vibratory Absorption Process" had not been furnished and installed in conformity with the prime or general contract. As a result, payments of over $2,000,000 were denied to Muscarelle by the owner.
On April 30, 1981 Muscarelle made demand on Wakefern to arbitrate the dispute in New York, a demand Wakefern resisted. In July 1981 Judge Tyler of the Supreme Court of New York denied Wakefern's application for a stay and granted Muscarelle's motion to compel arbitration in New York. His order was affirmed by the Appellate Division of that court.
In his oral decision in this case the judge of Chancery found that the law of New Jersey applied and that the arbitration clause 32 invoked by Muscarelle was enforceable. The judge thought that Kalman could probably enforce arbitration as well, if it wanted to, but he did not have to reach that point, nor do we. He also found no disparity of bargaining power between the parties which would justify voiding the agreement, in whole or in part. The judge rejected Muscarelle's motion to compel consolidation of the Muscarelle-Kalman arbitration with the Wakefern-Muscarelle arbitration, declining to exercise jurisdiction on the point.

A
We conclude that the choice of New Jersey law was entirely appropriate. Paragraph 32 of the subcontract ordained *21 that New Jersey law controls. Muscarelle is a New Jersey corporation with its only place of business in Maywood, Bergen County, the venue of these actions. Kalman is a Delaware corporation authorized to do business in this State and appears to operate nationally. Wakefern is a New Jersey corporation with its principal place of business in Elizabeth, Union County.
We reject Kalman's contention that New York law and its courts alone should control all claims by the parties simply because New York was the construction site. Generally, where parties have agreed in a commercial agreement to be governed by the laws of a particular state, our courts will uphold the contractual choice if it is not violative of the public policy of New Jersey. See Crinnion v. The Great Atlantic & Pacific Tea Co., 156 N.J. Super. 479, 483 (App.Div. 1978); Knollmeyer v. Rudco Industries, Inc., 154 N.J. Super. 309, 312-313 (App. Div. 1977), certif. den., 77 N.J. 477 (1978). This view is reflected in the Restatement 2d, Conflicts of Laws, § 187 at 561 (1971), which says in pertinent part
(1) the Law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
Professor Leflar states that of the three traditional choice of law rules, i.e., place of making, place of performance, and choice of the parties, the latter is "now regarded more highly than the two others." Leflar, American Conflicts Law, § 147 at 301 (1977). He observes that "the right of the parties to determine for themselves what State's law shall govern their *22 contract is now generally approved by the authorities," id. at 303, and that "the Restatement (Second) rates this as the preferred basis for contract choice of law, ...." ibid., so long as the law chosen is that of a state which has a substantial relation to the parties or the transaction. In accord is the Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq., 1 U.L.A. 23 (1976). We conclude that this State has sufficient contacts with the parties in this three-party contractual relationship to make the choice of our law governing the arbitration clause in the subcontract a reasonable contractual term, not offensive to any previously enunciated or presently viable public policy of this forum.

B
We turn to the contention in Kalman's first appeal that the arbitration clause in paragraph 32 is unenforceable because it lacks mutuality. We repeat the arbitration clause in dispute.
32.... The Subcontractor shall not institute any action, in any wise relating to this Subcontract, against the Contractor and/or the latter's surety, except in a court of competent jurisdiction in the County of Bergen, State of New Jersey. Anything herein to the contrary notwithstanding, the Contractor shall have the right to compel arbitration of any controversy arising hereunder in the County and State of New York before the American Arbitration Association, in accordance with its rules then obtaining.
We begin with the knowledge that in several cases the New York and Florida courts have invalidated arbitration clauses which have given one party, but not the other, the right to demand arbitration. See, e.g., Arcata Graphics Corp. v. Silin, 59 A.D.2d 1007, 399 N.Y.S.2d 738, 738-739 (App.Div. 1977); Deutsch v. Long Island Carpet Cleaning Co., 5 Misc.2d 684, 158 N.Y.S.2d 876, 877 (Sup.Ct. 1956). We disagree with this approach and follow the contrary view in which Alaska joins.
These cases are typical of the New York approach. In Hull Dye & Print Works, Inc. v. Riegel Textile Corp., 37 A.D.2d 946, 325 N.Y.S.2d 782 (App.Div. 1971), the court invalidated a clause as not mutually binding and enforceable:

*23 (14) Any controversy arising under or in relation to the contract or any modification thereof may be settled by arbitration or by suit in any Court having jurisdiction, as the Mill shall direct.... The parties consent to the jurisdiction of the Supreme Court of the State of New York, and to the Courts of the State of Connecticut as the Mill shall elect.
[325 N.Y.S.2d at 783].
The court construed the above clause as giving one party the unilateral right to arbitrate and held that neither party was required to arbitrate  one, because it has the option to arbitrate or litigate, and the other, because the agreement was not mutual.
In Kaye Knitting Mills v. Prime Yarn Co., 37 A.D.2d 951, 326 N.Y.S.2d 361 (App.Div. 1971), a sales agreement for the purchase of a quantity of yarn provided that "[a]ny controversy or claim arising out of or relating to this contract or breach thereof, may be settled by arbitration at the option of the Seller only." 326 N.Y.S.2d at 362. The court found that the arbitration provision did not evidence a mutual promise to resolve all controversies by arbitration, saying "it should be clearly manifest that the parties adopt arbitration as their exclusive remedy before any party should be forced into arbitration." Id. at 363.
In Firedoor Corp. of America v. R.K. & A. Jones, 47 A.D.2d 878, 366 N.Y.S.2d 433 (App.Div. 1975), the following clause was found to be ineffective to require the parties to arbitrate for lack of mutuality:
Any and all issues or disputes of fact which may now or hereafter arise between the parties respecting the performance or breach hereof shall, upon demand of Seller upon five (5) days' written notice given to Purchaser, be determined and resolved by means of arbitration conducted under the rules and regulations of the New York Supreme Court. This provision shall in no way be interpreted to effect and/or waive Seller's rights under any or all statutes and/or laws.
[366 N.Y.S.2d at 444].
The court found it "manifestly unfair to allow the seller to elect between arbitration and court action and to deny the buyer the same right." Id. at 455. See also Regeant of Shelby v. Leumas Knitting Mills, 54 A.D.2d 667, 387 N.Y.S.2d 843, 844 *24 (App.Div. 1976); Cored Panels, Inc. v. Meinhard Commercial Corp., 72 A.D.2d 544, 420 N.Y.S.2d 731 (App.Div. 1979).
At least one New York decision has upheld the parties' right to refer some issues to arbitration but not others. In Riccardi v. Modern Silver Linen Supply Co., 45 A.D.2d 191, 356 N.Y.S.2d 872 (App.Div. 1974), aff'd 36 N.Y.2d 945, 373 N.Y.S.2d 551, 335 N.E.2d 856 (Ct.App. 1975), at issue was the validity of the following clauses contained in two contracts
Except to the extent the Company elects otherwise pursuant to the provisions of paragraph 2(e) above, any controversy or claim arising out of or relating to this contract or any breach thereof, shall be settled by arbitration....
Paragraph 2(e) provided:
Any and all controversies, claims or disputes which may arise with respect to whether the Employee shall have violated any of the foregoing provisions of this paragraph 2 may be enforced by the Company, at its option, either by an action or proceeding in any court having jurisdiction or by arbitration in accordance with the provisions of paragraph 7 hereinafter.
[356 N.Y.S.2d at 874].
In his action to restrain arbitration of a dispute, petitioner argued that the arbitration agreements were invalid because they were not mutually binding. The court responded
... Of course, the enforceability of agreements to arbitrate is governed by the rules applicable to contracts [citations omitted], and as in any bilateral agreement both parties must be bound or neither is bound [citation omitted]. But, that does not mean that the mutual promises must create in each of the parties identical rights and obligations or that the parties must be bound in the exact same manner.
[356 N.Y.S.2d at 875-876].
The court distinguished Hull Dye and Kaye Knitting Mills on the basis that the arbitration agreements in those cases lacked mutuality as to the entire agreement; the option to arbitrate was vested in only one of the contracting parties and embraced the full scope of the agreement  any and all controversies. "Thus, in each of those cases, the entire agreement was without consideration, a situation, which as discussed above, is not here present." 356 N.Y.S.2d at 876. The Court of Appeals affirmed in a brief opinion which also distinguished Hull Dye and Kaye Knitting Mills, explaining that in those cases "the option to invoke arbitration as to the whole contract was vested *25 in one party whereas here all the obligations and provisions are reciprocal, save the enforcement of the restrictive covenant." 373 N.Y.S.2d at 551, 335 N.E.2d 856.
We have found only two decisions from other jurisdictions which have addressed the question of mutuality of remedy under an arbitration clause. Florida accepts New York's position; Alaska rejects it.
In R.W. Roberts Const. Co. v. St. John's River, 423 So.2d 630 (Fla.Ct.App. 1982), in issue was the following provision in a subcontract
All claims by Subcontractor against General Contractor for whatever nature which involve this subcontract or the project shall be submitted to arbitration in the same manner as provided in the General Contract unless those provisions should prove invalid for arbitration in which event the arbitration provisions of the Florida Statutes shall prevail.
[423 So.2d at 631].
There the general contract provided that claims were to be submitted to the architect-engineer within 30 days from the date they arose, claims were to contain certain enumerated information, the decision of the architect-engineer was final unless a petition for arbitration was filed within 20 days thereafter, and the petition for arbitration must contain information similar to that in the claim. Ibid. The general contractor sought arbitration after the subcontractor filed a complaint seeking recovery under a performance and payment bond. The trial court denied motions to compel arbitration and to stay the court proceedings.
On the general contractor's appeal from the trial court's denial of its motion, the subcontractor argued to the Florida appellate court that the arbitration clause was invalid because it only required the arbitration of claims by the subcontractor but not claims by the general against the subcontractor. The court held that in Florida "mutuality of obligation is a requirement" and severed the arbitration clause as void, agreeing with the subcontractor's right to sue in court.
*26 The Alaska Supreme Court took the opposing view in Willis Flooring v. Howard S. Lease Const., 656 P.2d 1184 (Alaska Sup.Ct. 1983). There the clause in issue provided in part
Contractor, at its sole option, shall have the right to require Subcontractor to arbitrate any and all claims, disputes, and other matters in question between the Contractor and the Subcontractor arising out of or related to the Subcontract or the breach thereof. Subcontractor agrees that, upon the written demand of Contractor based on a contention of a duty of Subcontractor to indemnify Contractor, it will become a party to any arbitration proceeding involving Contractor, and any third party.
[656 P.2d at 1184].
When the contractor sought arbitration the subcontractor objected, arguing, among other things, that the clause was invalid because it was unilateral. The arbitrators found the agreement to be binding and held a hearing. The contractor subsequently succeeded in an action to confirm the award and the subcontractor appealed from the order of confirmation. In support of its claim that the arbitration clause was unenforceable, the subcontractor relied on the New York opinions. In rejecting the New York and Florida approach, the court stated
... As one clause in a larger contract, the option clause is binding to the same extent that the contract as a whole is binding. Consideration for the option clause was included in the consideration for the entire transaction, just as consideration for every other clause was included. [Footnote omitted.] This was a unitary, integrated contract, not a series of independent agreements.
We see no unfairness, nor any coercion, inherent in this resolution of the case. The entire controversy relating to the subcontract between the parties was submitted to arbitration. Arbitration is not so clearly more or less fair than litigation that it is unconscionable to give one party the right of forum selection. The bargain that Willis voluntarily entered into is enforceable.
[Id. at 1185-1186].
Under our statute, N.J.S.A. 2A:24-1, a provision in a written contract to settle a controversy by arbitration is "valid, enforceable and irrevocable" except upon "such grounds as exist at law or in equity for the revocation of a contract." Our courts have accepted the statute as reflecting a public policy favoring commercial arbitration. Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 186 (1981); J. Baranello & Sons, Inc. v. City of Paterson, 168 N.J. Super. 502, 506-507 (App.Div.), certif. den., 81 N.J. 340 (1979); Hudik-Ross, Inc. v. *27 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 166 (App.Div. 1974); see also Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 196 (1981).
Our Supreme Court has said that "an expansive approach [i.e., construction] is supported by the public policy favoring arbitration." Id. at 196. Nothing in our arbitration statute requires that all controversies under a contract be submitted to arbitration. See N.J.S.A. 2A:24-2. ("Whether the controversy arises out of a contract or the refusal to perform the whole or a part thereof or out of any other matter.") Our Supreme Court's Committee on Complementary Dispute Resolution, chaired by Associate Justice Marie L. Garibaldi, is currently exploring and adopting new methods of alternative resolution of all types of disagreements in an effort to confront our current litigation burdens. See Supreme Court Orders Arbitration in Auto Negligence Cases, 113 N.J.L.J. 76 (January 19, 1984). The New Jersey Automobile Insurance Law was amended, effective January 1, 1984, to provide two new systems of arbitration. One, administered by the courts, provides for arbitration of liability of claims under $15,000; the second provides for arbitration of disputed Personal Injury Protection (PIP) benefits under N.J.S.A. 39:6A-4 by the AAA. See AAA Proposed PIP Arbitration Rules, 113 N.J.L.J. 109 (February 2, 1984).
We acknowledge defendant Muscarelle's argument that interpretation of the arbitration agreement is a matter of federal substantive law under the Commerce Clause, U.S. Const., Art. I, § 8, and the Federal Arbitration Act, 9 U.S.C.A. § 2 (1976), because of the interstate aspects. But we decide this case on state-law grounds which we perceive to be entirely consonant with extant federal law construing the "liberal" enforcement of arbitration agreements. See Southland Corp. v. Richard D. Keating, ___ U.S. ___, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Moses H. Cone Memorial Hospital v. Mercury Constr., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*28 ... Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. [Id. 460 U.S. at 24, 103 S.Ct. at 941, 74 L.Ed. at 785].
Thus we see no statutory or current philosophical bar to a contract clause which requires commercial arbitration of only certain disputes between the parties or permits unilateral triggering of the arbitration clause.
Nor do we find any common-law barrier in our jurisprudence to Muscarelle's contention that its claim against Kalman is subject to arbitration despite lack of mutuality of remedy. In Fleischer v. James Drug Stores, 1 N.J. 138, 149 (1948), Justice Heher stressed that mutuality of obligation, not mutuality of remedy, was the important point. "It is not necessary, to serve the ends of equal justice, that the parties shall have identical remedies in case of breach." Ibid. See Walter v. Hoffman, 267 N.Y. 365, 196 N.E. 291 (1935) (Cardozo, J.). In K & J Clayton Holding Corp. v. Keuffel & Essex Co., 113 N.J. Super. 50, 54 (Ch.Div. 1971), Judge Lynch said of "lack of mutuality": "That concept has been the object of repeated judicial attempts to inter it." In Centex Homes Corp. v. Boag, 128 N.J. Super. 385, 392 (Ch.Div. 1974), the court spoke of "the disappearance of the mutuality of remedy doctrine from our law."
The recognized authorities are in agreement. "It has sometimes been said that there is a requirement of mutuality of remedy. However, the law does not require that the parties have similar remedies in case of breach, ..." Restatement, Contracts 2d, § 363 comment (c) at 183 (1981). Professor Farnsworth, the reporter for the Restatement 2nd, speaks of the "now discredited mutuality of remedy rule," Farnsworth, Contracts § 12.4 at 822 n. 18 (1982), and directs us to 5A Corbin, Contracts §§ 1178-1204 (1964), for "an extensive criticism of the rule." Williston says: "While this `rule' had some significance some few decades ago, it has been quite generally repudiated, especially as the exceptions gradually *29 swallowed it." 11 Williston, Contracts (3rd ed. Jaeger), § 1433 at 884.
We conclude that there is no inherent unfairness in enforcing a contractual clause which gives Muscarelle alone the right to compel AAA arbitration, especially where the dispute between Muscarelle and Wakefern is subject to AAA arbitration, and both disputes arise out of the identical flooring work. Kalman retains its remedy to sue for legal damages if it desires to do so and Muscarelle does not demand arbitration. We see no reason why justice should require perfect symmetry of remedy and there is no suggestion made that commercial arbitration is not a desirable alternative to judicial dispute resolution.
In conclusion, we find Kalman's contention that the contract was the product of "adhesion" and void to be clearly without merit on this record. R. 2:11-3(e)(1). The Chancery Division's order in A-4669-81T2 is affirmed.

II
In this companion case (A-2785-82T2), consolidated for purposes of opinion, Kalman appeals from an order of the Chancery Division refusing to enjoin consolidation of the two arbitration proceedings, Wakefern-Muscarelle and Muscarelle-Kalman, by the arbitrators. On this appeal Kalman contends that under the precise terms of the arbitration clause the arbitrators had no authority to consolidate the two arbitration proceedings. Again implicated is clause 32 of the flooring subcontract which states that Muscarelle "shall have the right to compel arbitration of any controversy arising hereunder ... before the American Arbitration Association, in accordance with its rules then obtaining." (Emphasis supplied).
The rules of the AAA have no specific provisions for consolidation or for a common panel of arbitrators without consent of the parties or court order. However, in this instance the AAA "provided the parties to the Court proceeding ... with the right *30 to present to the arbitrators the question of consolidated, joint or serial arbitration." After considering this threshold question the panel concluded in Muscarelle's favor
The panel has carefully considered the matter and the desires and the determination at this time is that both proceedings should be consolidated and that the hearings proceed in this matter before this panel.
The Chancery Division judge, in effect, abstained, refusing to condone or condemn the arbitrator's ruling on consolidation. We conclude that he was right. The question of consolidation was a procedural matter. Once it was determined in the arbitration forum, the courts should not interfere with the proceeding. The United States Supreme Court has observed
... Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it....
Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration....
Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.... Reservation of "procedural" issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.
[Wiley & Sons v. Livingston, 376 U.S. 543, 556-558, 84 S.Ct. 909, 917-918, 11 L.Ed.2d 898 (1964)].
Federal and state courts have generally followed this approach and have held that the timeliness of a demand for arbitration and other procedural issues relating to the conduct of the arbitration proceeding itself are for the arbitrator. See, e.g., Local 12934 v. Dow Corning Corp., 459 F.2d 221 (6th Cir.1972); Local Lodge No. 595 of Dist. No. 152 v. Howe Sound Co., Inc., 350 F.2d 508, 511 & n. 8 (3rd Cir.1965); The Stop and Shop Cos., Inc. v. Gilbane, 364 Mass. 325, 304 N.E.2d 429, 432 (Sup.Jud.Ct. 1973); Village of Carpentersville v. Mayfair Const., 100 Ill. App.3d 128, 55 Ill.Dec. 412, 426 N.E.2d 558, *31 562-563 (Ct.App. 1981); County of Rockland v. Primiano Const. Co., Inc., 51 N.Y.2d 1, 431 N.Y.S.2d 478, 409 N.E.2d 951, 954 (Ct.App. 1980); 7 Uniform Laws Annot. 33, 41 (1978); see also Standard Motor Freight Inc. v. Local Union No. 560, 49 N.J. 83, 96-97 (1967).
Our Supreme Court has recently observed
Arbitration is "a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law," and its object is "the final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties." [Citation omitted]. Arbitration can attain its goal by providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, "meant to be a substitute for and not a springboard for litigation." Korshalla v. Liberty Mutual Ins. Co., 154 N.J. Super. 235, 240 (Law Div. 1977)....
These principals are incorporated in the arbitration act, N.J.S.A. 2A:24-1 to -11. The act grants arbitrators extremely broad powers and extends judicial support to the arbitration process subject only to limited review.... Arbitrators are given these extensive powers subject to judicial review limited to the narrow grounds of arbitrator partiality or corruption, fraud, undue means, conduct prejudicial to the rights of a party or failure to make a "mutual, final and definite award," N.J.S.A. 2A:24-8 or "evident" mistakes by the arbitrators, N.J.S.A. 2A:24-9.
[Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 187-188 (1981)].
We conclude that the questions of consolidation and use of a common panel, with serial arbitration, were procedural issues for determination in the arbitration forum, free from judicial interference.
We are not called upon here to decide the question of whether a court has the power to compel arbitration in an appropriate case where there is no statutory authority or express contractual right. But we do note a recent judicial attitude in favor of ordering consolidation of arbitration under the court's general equity powers where manifestly appropriate. There are "serious problems caused by using arbitration to resolve some aspects of a single, complex controversy and using litigation to resolve others." Rush v. Kuhn, Smith & Harris, 193 N.J. Super. 389 (App.Div. 1984).
*32 In Long Branch Sewerage Auth. v. Molnar, 143 N.J. Super. 492 (Ch.Div. 1976), plaintiff had contracted with defendants for general construction and for specified elements for the construction of a waste water treatment plant. Each contractor had a separate contract with plaintiff and among the terms common to each of the contracts was the following clause
It is mutually agreed that any matters of controversy involving time or financial consideration that cannot be settled by the parties to this Contract shall be submitted to arbitration and that the award of the arbitrators, except when reached by fraud or mistake, shall be binding upon both parties.
[Id. at 494].
Additionally, arbitration was to be "by and in accordance" with the procedure and standards of the American Arbitration Association. Ibid. An electrical contractor filed a demand for arbitration against plaintiff who requested the AAA to bring other contractors into the arbitration. The AAA refused to do so absent the consent of all the parties; the electrical contractor did not consent. Plaintiff then filed an order to show cause seeking to compel consolidated arbitration. In directing that the arbitration proceed before a single arbitration panel, the judge observed:
... [T]his is not a strict consolidation matter but rather one involving more general contract rights. To say that all would be bound to the same arbitration agreement if the contracts were formed as a unit, but not so if the same terms are placed in individual contracts, is to deny logic. This is particularly so where all the parties had knowledge of the general arbitration language. The relationship with the parties now before the court may be viewed as being more "horizontal" than "vertical." While there may be a conflict in case law as to whether a court will order a consolidation of arbitrations, it will enforce a common arbitration agreement where (1) the contract clauses are identical, and (2) the parties had knowledge of the common arbitration language.
... [W]here there are conflicting claims, a common contract term, and knowledge by all parties of the common term, enforcement of a one-unit arbitration may be required to avoid conflicting and inconsistent results. This would seem to be in keeping with the intention of the parties.
[Id. at 498].
In Polshek v. Bergen Cty. Iron Works, 142 N.J. Super. 516 (Ch.Div. 1976), Judge Petrella reviewed out-of-state decisions *33 where courts had considered whether they could direct consolidation of arbitration proceedings. Id. at 525-258. In Judge Petrella's view, while there was no explicit statutory directive permitting consolidation of arbitration proceedings, there was no basis for finding that New Jersey statutes prohibited it "where there is a common thread." Id. at 528. The court properly observed
In this case there is an uncontroverted common thread of issues and facts arising out of a single project. Absent specific language prohibiting joint or consolidated arbitration, and when and where there is no showing of prejudice, consolidation is a practical, economical, convenient and preferred method of proceeding in the matters before the court. This is not doing indirectly what cannot be done directly since plaintiff has a contract with an agreement for arbitration with Englewood and Englewood had the similar contract provision with Bergen Iron.
[Id. at 529].
The court also noted that Domke, The Law and Practice of Commercial Arbitration, § 27.02 at 272-273 (1968), states the general rule to which we subscribe that a court could order consolidation "if the issues are substantially the same and no substantial right is prejudiced." Ibid. Contra Wm. C. Blanchard Co. v. Beach Concrete Co., 121 N.J. Super. 418 (Ch.Div. 1972), aff'd on other grounds 150 N.J. Super. 277, 300 (App.Div. 1977), where Judge Pressler seriously questioned the trial judge's refusal to order consolidated arbitration, although she affirmed the substantive result upon review by this court. She said
... The result in Blanchard was, in our view, in direct contradiction to the principle of expeditious determination of an entire controversy, a principle to which we are irrevocably committed as the first premise for proper administration of civil justice. We suggest that the Chancery Division judge took too narrow a view of his authority under the Arbitration Act, and we are impressed with the contrary conclusion recently expressed by the Chancery Division in Polshek v. Bergen Cty. Iron Works, 142 N.J. Super. 516 (Ch.Div. 1976), in which, in similar circumstances, consolidated arbitration was ordered even though not every party thereto had an arbitration agreement with every other party. [Ibid.].
The Chancery Division's order in A-2785-82T2 is affirmed.